■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY DANSA, Appellant.—Judgment unanimously affirmed. Memorandum: Defendant appeals from a judgment convicting him, after a jury trial, of murder in the second degree. On appeal defendant contends that (1) the admission into evidence of photographs of the victim both before and after the shooting and of the victim's cap was unduly prejudicial; (2) denial of defendant's requests to charge the jury deprived defendant of due process; (3) the use of defendant's written statement for impeachment purposes violated his Fifth and Sixth Amendment rights; (4) the verdict was against the weight of the evidence; and (5) the sentence was harsh and excessive. None of defendant's contentions requires reversal.

Photographs of a corpse should not be admitted unless they tend to prove or disprove a material fact in issue *(People v Pobliner,* 32 NY2d 356). Even when relevance is demonstrated, however, the question of admissibility is within the sound discretion of the court *(People v Stevens,* 76 NY2d 833, 835). Here, the picture of the victim lying on the floor at the scene of the crime is not unduly prejudicial and was relevant to a determination of defendant's intent. The testimony established that when defendant entered the diner, the victim attempted to escape by running down a hall toward the ladies' room, that he pursued her, shooting her two or three times, then threw her to the floor where he shot her in the head. The photograph of the victim on the floor, in conjunction with the other pictures of the layout of the diner and blood spatters in the ladies' room and at the end of the hall, bears out that testimony and is relevant on the issue of defendant's intent to kill the victim. It was therefore not error to admit that photograph.

Inasmuch as a portrait of the victim taken sometime prior to her death had no relevance to any issue at trial and was

offered only as an accurate representation of the appearance of the victim at some undetermined time prior to the crime, it was error to admit it *(see, People v Stevens, supra,* at 836). Similarly, it was error to admit the cap worn by the victim on the day of the crime as it was not relevant to any issue at trial. Nevertheless, admission of the portrait and the cap was innocuous and the error was harmless.

The trial court did not err in refusing to submit a charge on second degree manslaughter to the jury. Defendant, charged with murder in the second degree (Penal Law § 125.25), offered an affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1] [a]) which, if accepted by the jury, would have permitted it to reduce the murder count to manslaughter in the first degree (Penal Law § 125.20 [2]). That was the sole defense theory at trial. There was no view of the evidence by which the jury could have found defendant guilty of manslaughter in the second degree (Penal Law § 125.15 [1]), i.e., that he recklessly caused the death of Mary Gugino. The evidence established that defendant had threatened the victim within days prior to the shooting, had borrowed the gun on Saturday, sold his belongings, told people to watch TV on Monday because he would be on it, sat outside the diner contemplating his actions for a few moments prior to the crime, and, in his own words, "Ramboed in" the diner, shooting Mary four times, the shot to the head being administered after she was lying on the floor severely wounded. That evidence could not be viewed as establishing reckless conduct.

The court's charge on extreme emotional disturbance was proper and the court did not err in refusing to charge the jury on intoxication since no defense of intoxication was submitted. The court properly told the jury that it could consider defendant's consumption of drugs and alcohol as one factor in contributing to his extreme emotional disturbance.

The use of defendant's written statement for impeachment purposes did not violate his Fifth or Sixth Amendment rights. A defendant's prior inconsistent statement obtained in violation of his constitutional rights may nevertheless be used to impeach the credibility of a defendant who takes the stand to testify in contradiction of the prior statement *(see, People v Maerling,* 64 NY2d 134, 140; *People v Ricco,* 56 NY2d 320, 323). The admissibility of such statements turns on the issue of voluntariness *(see, People v Maerling, supra,* at 140). Here, defendant repeatedly admitted shooting Mary Gugino, despite the admonishments of police officers who told him to stop talking so that they could administer his rights. Defendant

continued to "rant and rave", attempting to justify his actions by explaining to the police that she had been unfaithful. When defendant eventually invoked his right to counsel and police officers spoke with counsel on the telephone, they stopped questioning defendant and informed him not to say anything further on advice of his counsel. Defendant went on a tirade against the attorney, shouting, "Who the ____ does he think he is? I'll tell you guys everything". At the suppression hearing, the People stipulated that the written statement taken after that point would not be used on their direct case. The suppression court found, nevertheless, that defendant's oral statements were made spontaneously and voluntarily and were not the product of police interrogation. We conclude, therefore, that defendant's written statement was properly used on cross-examination to impeach his credibility. Even if it were error to admit the statement, any error was harmless inasmuch as it differed only slightly from his direct testimony.

On our review of the record, we find that defendant's conviction was not against the weight of the evidence (see, People v Bleakley, 69 NY2d 490) and that defendant's sentence was not excessive. (Appeal from Judgment of Supreme Court, Erie County, Wolfgang, J.—Murder, 2nd Degree.) Present—Denman, J. P., Balio, Lawton, Lowery and Davis, JJ.