■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD J. LONGO, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Saratoga County (Williams, J.), rendered February 22, 1990, upon a verdict convicting defendant of the crime of murder in the second degree.

In November 1988, a Grand Jury indicted defendant on two counts of murder in the second degree. The first count alleged intentional murder and the second count alleged depraved indifference to human life murder. These charges stemmed from an incident which occurred on November 5, 1988 at approximately 12:20 A.M. at the Spa City Diner in the City of Saratoga Springs, Saratoga County. At about that time, decedent, William McEntire, and his roommate William Pillsbury

were eating a meal when an argument ensued between decedent and defendant over some remarks decedent allegedly made to one of the waitresses. Because of defendant's loud and disturbing conduct, the manager escorted him to the diner's foyer and asked him to leave the premises. Defendant motioned to decedent to join him outside. He was overheard by other diner patrons saying that he would wait for decedent outside.

Approximately five minutes later, decedent entered the foyer while Pillsbury paid the check. A fight ensued between decedent and defendant. Following decedent to the foyer, Pillsbury told decedent to "cut it out, let's get the hell out of here" and decedent backed away from defendant. However, Pillsbury then heard defendant say "I'll get you" or "I'll kill you" and the fight resumed. The two struggled, and defendant fell to the floor with decedent on top of him, hitting him. Pillsbury then saw defendant come up with a knife and stab decedent, who was unarmed. Decedent then fell away from defendant and staggered back before collapsing. Defendant got up from the floor, went outside to his car, wiped the blood off the knife and drove away. Decedent was taken to the hospital, where he died approximately 20 minutes later from a loss of blood caused by one of the knife wounds to his abdomen which severed his aorta. A jury trial was held at which defendant testified on his own behalf and claimed that he stabbed decedent in self-defense. Nevertheless, the jury convicted defendant of depraved indifference murder and the court sentenced him to a prison term of 20 years to life. Defendant now appeals.

Initially, we disagree with defendant that the People's proof at trial was insufficient to sustain the charge of depraved indifference murder and that the jury's verdict was against the weight of the evidence. In order for the prosecution to prove that defendant was guilty of depraved indifference murder, the evidence must show that defendant "[u]nder circumstances evincing a depraved indifference to human life * * * recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 125.25 [2]; *see, People v Roe,* 74 NY2d 20, 24; *People v Bryce,* 174 AD2d 945, 946, *lv denied* 79 NY2d 854). Generally, conduct which is "imminently dangerous and present[s] a very high risk of death to others" constitutes a wanton indifference for human life *(People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953; *see, People v Gomez,* 65 NY2d 9, 11).

Here, viewing the evidence in the light most favorable to

the People (see, People v Contes, 60 NY2d 620, 621), we find that the evidence was legally sufficient to satisfy the elements of defendant's conviction and also to disprove the defense of justification beyond a reasonable doubt (see, People v Jones, 175 AD2d 294, lv denied 78 NY2d 1012). Prosecution witnesses established that defendant was under the influence of alcohol and belligerent prior to the stabbing and that he instigated the argument with decedent. After being told to leave the restaurant, defendant instead lingered near the doorway, gesturing and making audible threats to decedent. While it is true that once the fight began decedent, the younger and bigger man, inflicted quite a few blows on defendant, Pillsbury testified that he managed to get decedent away from defendant, thereby giving defendant an opportunity to retreat. Instead of doing so, defendant lured decedent back within his range and proceeded to pull a knife on the unarmed man and inflicted five serious knife wounds. Decedent was stabbed in the scalp, neck, arm, leg and abdomen. Medical testimony indicated that the widespread wounds suffered by decedent were exceedingly deep and forceful, requiring extraordinary effort and movement on defendant's part. In our view, defendant's failure to retreat, the number of stab wounds sustained by decedent and the comparatively minor cuts and bruises sustained by defendant in the fight all serve to negate the essential elements of the justification defense (see, supra). In the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]; People v Bryce, supra, at 946).

Next, we reject defendant's claim that the People committed reversible error on their direct case by asking defendant's girlfriend, Amy Morrison, who was working as a waitress at the diner that night, the single question of whether she told the entire truth in her Grand Jury testimony in this matter. Morrison answered "no". The prosecutor's next question was withdrawn and the whole line of questioning was abandoned. According to defendant the single question put to Morrison violated CPL 60.35, which involves the impeachment of a party's own witness by use of a prior inconsistent statement (see, People v Fitzpatrick, 40 NY2d 44, 48). However, as noted by the People, this statute unquestionably does not apply here since the prosecutor never produced any Grand Jury minutes or other allegedly prior inconsistent statement in an attempt to impeach Morrison. The record shows that the prosecutor abandoned any strategy he had concerning that line of questioning and defense counsel did not bring the matter up again

on cross-examination. In our view, no impeachment was undertaken and CPL 60.35 was inapplicable.

Defendant also argues that the admission into evidence of certain photographs of decedent's injuries was unduly inflammatory, irrelevant and that their admission was an abuse of County Court's discretion. We disagree. Generally, photographs of a deceased victim are admissible when they "illustrate or elucidate other relevant evidence" which has been introduced at trial (People v Pobliner, 32 NY2d 356, 369, cert denied 416 US 905). Significantly, the admission of such photographs is normally left to the sound discretion of the trial court (supra; see, People v Stevens, 76 NY2d 833, 835; People v Dansa, 172 AD2d 1011, lv denied 78 NY2d 964). Here, the photographs of decedent after the stabbing were permissibly introduced to elaborate and explain the medical testimony concerning decedent's wounds and cause of death. Therefore, we decline to reverse on that ground.

As for defendant's contention that this court should reduce his sentence in the interest of justice (see, CPL 470.15 [6] [b]), we note that this power is normally exercised only in extraordinary circumstances or where the trial court abused its discretion (see, People v Ambrose, 160 AD2d 1097, 1097-1098, lv denied 76 NY2d 784). In light of the brutal and violent nature of defendant's crime, we cannot agree that alteration of defendant's sentence, which was within statutory guidelines, is warranted.

Finally, defendant raises several other arguments challenging, inter alia, the jury charge, the People's summation and the People's examination of certain witnesses. However, defendant waived any right to appellate review of these issues by failing to object to these alleged errors at trial (see, CPL 470.05 [2]). Upon reading defendant's arguments and a review of the very strong evidence of his guilt, we find no compelling reason to reverse in the interest of justice (see, CPL 470.15 [6] [a]). Affirmance of defendant's conviction is therefore required.

Weiss, P. J., Yesawich Jr., Mahoney and Casey, JJ., concur. Ordered that the judgment is affirmed.