■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH D. LEVY, Also Known as KEEFY, Appellant. [859 NYS2d 527]—

Stein, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered October 12, 2006, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, attempted assault in the first degree, criminal possession of a weapon in the second degree and reckless endangerment in the first degree.

During the early morning hours of October 22, 2005, the police responded to reports of an altercation outside of a local nightclub in the City of Binghamton, Broome County. Upon arriving at the scene, Lieutenant John Chapman observed approximately 200 people socializing outside the nightclub. Shortly thereafter, he heard multiple gun shots and witnessed several victims fall to the ground. Although none of the victims was killed, several were wounded. The shooters were not ap-

prehended at the crime scene. However, based upon a police investigation, defendant was arrested weeks later in Brooklyn and was charged with attempted murder in the second degree, attempted assault in the first degree, criminal possession of a weapon in the second degree and reckless endangerment in the first degree. Following a jury trial, defendant was convicted on all four counts. Defendant's motion for dismissal at the conclusion of the prosecution's case-in-chief and his postverdict motion pursuant to CPL 330.30 regarding the sufficiency and weight of the evidence were denied. Defendant was subsequently sentenced to an aggregate term of imprisonment of 14 years, followed by five years of postrelease supervision. Defendant now appeals.

Initially, we reject defendant's contention that his convictions, as to each count, were based upon legally insufficient evidence or were against the weight of the evidence. When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People (*see People v Brown*, 46 AD3d 949, 951 [2007], *lv denied* 10 NY3d 808 [2008]), and we will not disturb the verdict if the evidence demonstrates a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

Here, defendant contends that the evidence was insufficient to support a finding that he was in proximity to the origin of the gun shots, that he was in possession of a gun at the time of the shooting or that he actually shot a weapon. We disagree. There was testimony at trial to establish that defendant met James Durham at the nightclub on October 22, 2005. The two then came into contact with Russell Callender and codefendant Isiah Tolbert. At some point, they became aware of the presence of Derek Carr, a rival of defendant from his hometown of Brooklyn. The police investigation later revealed that a member of Carr's crew had shot defendant during an altercation approximately a month earlier. Callender, who knew of the rivalry between defendant and Carr, handed guns to Durham and Tolbert. After the nightclub closed, a confrontation between defendant and his friends and Carr and his crew occurred in the crowd outside. There was testimony that defendant pulled out the gun which Callender had provided to Durham and fired two shots in the direction of Carr, after which Tolbert followed with a volley of shots of his own. After the shooting, defendant, Durham and Callender made their way to the home of Anthony Jones, where defendant was observed attempting to clear a jammed firearm.

We specifically find that the accomplice testimony was sufficiently corroborated by other independent evidence that tended to connect defendant to the commission of the crimes charged (*see People v Besser*, 96 NY2d 136, 144 [2001]; *People v Brown*, 30 AD2d 279, 281 [1968]). For example, several witnesses, including Durham and Marcell Harris, saw defendant standing with Tolbert and Callender during the confrontation with Carr outside the nightclub. Their testimony was supported by Raymond Lee, who saw a Jamaican man and two black males arguing with another black male just before the two black males pulled out handguns and one* fired at the other black male. In addition, Jones confirmed that defendant came to his house with the others after the shooting and testified that defendant later complained to him that Jones had "told on him" to the police. The testimony of Detective Stephen Hunter regarding his conversations with defendant also corroborated the testimony of Tolbert and Callender regarding defendant's motive for the shooting and his knowledge of the shooting. Thus, there is legally sufficient evidence to support the verdict.

We also find that defendant's convictions are in accord with the weight of the evidence, notwithstanding defendant's emphasis on the testimony which is supportive of his contention that only Tolbert shot his gun. Where, as here, "based on all the credible evidence a different finding would not have been unreasonable" (*People v Bleakley*, 69 NY2d at 495), "the court must [then] weigh conflicting testimony, review any rational inferences that may have been drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007] [citation omitted]; *see People v Romero*, 7 NY3d 633, 636 [2006]; *People v Bleakley*, 69 NY2d at 495; *People v Khuong Dinh Pham*, 31 AD3d 962 [2006]). Viewing the evidence in a neutral light and giving "appropriate deference to the jury's superior opportunity to assess the witnesses' credibility" (*People v Gilliam*, 36 AD3d 1151, 1152-1153 [2007], *lv denied* 8 NY3d 946 [2007]; *see People v Griffin*, 26 AD3d 594 [2006], *lv denied* 7 NY3d 756 [2006]), we conclude that the verdict was not contrary to the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495).

Defendant's contention that the proceedings were defective because he was never given an opportunity to formally enter a not guilty plea was not preserved (*see People v Rote*, 28 AD3d

---

* As Lee testified that his view was blocked, his testimony does not preclude a finding that there were two shooters.

868, 869 [2006]). However, were we to address the issue, we would find this contention to be without merit because the parties proceeded as if defendant had entered a not guilty plea and defendant has not established that he was prejudiced by his failure to formally do so (*see People v Miller*, 27 AD3d 1017, 1017-1018 [2006]; *People v Rodabaugh*, 26 AD3d 598, 600 [2006]).

Likewise, defendant failed to preserve his challenge to the composition of the jury pool (*see* CPL 270.10 [2]; *People v Alpern*, 217 AD2d 853, 855 [1995], *lv denied* 87 NY2d 897 [1995]). Even if the issue were preserved, we would reject defendant's argument, as there is no record evidence that the absence of African-Americans on the jury panel was a result of a flawed selection process intended to exclude them (*see People v Guzman*, 60 NY2d 403, 410 [1983], *cert denied* 466 US 951 [1984]; *People v Studstill*, 27 AD3d 833, 835 [2006], *lv denied* 6 NY3d 898 [2006]; *People v Blanchard*, 279 AD2d 808, 811 [2001], *lv denied* 96 NY2d 826 [2001]). For this reason, we find that the failure of defendant's counsel to object to the jury panel was justified (*see People v Bonelli*, 41 AD3d 972, 973 [2007], *lv denied* 9 NY3d 921 [2007]). Thus, defendant's claim of ineffective assistance of counsel is unavailing.

Defendant also argues that three sidebar conferences held outside of his presence during a pretrial suppression hearing violated his right to be present at all material stages of the trial. While defendant's right to be present at all material stages of the trial includes pretrial suppression hearings (*see People v Morales*, 80 NY2d 450, 456 [1992]; *People v Dokes*, 79 NY2d 656, 659 [1992]) and sidebar conferences (*see* CPL 260.20; *People v Antommarchi*, 80 NY2d 247, 250 [1992]; *People v Bellamy*, 34 AD3d 937, 939 [2006], *lv denied* 8 NY3d 843 [2007]), that right does not extend to conferences which involve only legal or procedural issues (*see People v DePallo*, 96 NY2d 437, 443 [2001]; *People v Bellamy*, 34 AD3d at 939). Here, when viewed in context, it is apparent that the sidebar conferences at issue involved the order and availability of witnesses and other scheduling matters. However, even if it was error to exclude defendant from those conferences, such error was harmless as defendant's counsel essentially conceded the only two issues that were the subject of the suppression hearing and, thus, defendant cannot show any prejudice (*see People v Torres*, 249 AD2d 19, 20 [1998], *lv denied* 92 NY2d 907 [1998]; *People v Smeraldo*, 242 AD2d 886, 887 [1997], *lv denied* 91 NY2d 880 [1997]).

In view of the seriousness of the crimes of which defendant was convicted and the danger to which his conduct exposed

bystanders, and given the absence of any extraordinary circumstances or an abuse of discretion by County Court, we do not find that the sentences imposed were harsh and excessive (*see People v Longo*, 182 AD2d 1019, 1022 [1992], *lv denied* 80 NY2d 906 [1992]). Thus, we decline to modify the sentence (*see People v Thompson*, 60 NY2d 513, 519 [1983]; *People v Longo*, 182 AD2d at 1022).

We have examined defendant's remaining contentions and, to the extent they were preserved, we find them to be unpersuasive.

Spain, J.P., Lahtinen, Kane and Malone Jr., JJ., concur. Ordered that the judgment is affirmed.