■ The People of the State of New York, Respondent, v Charles R. Thibeault Sr., Appellant. [900 NYS2d 501]—

Kavanagh, J. Appeal from a judgment of the County Court of Cortland County (Campbell, J.), rendered April 23, 2009, upon a verdict convicting defendant of the crimes of murder in the second degree, burglary in the first degree, criminal possession of a weapon in the third degree and criminal contempt in the first degree.

On the evening of May 26, 2008, the bloody and half-clad body of defendant's estranged wife was found at the bottom of the staircase inside their home. An autopsy subsequently determined that the victim had been assaulted and while she lay at the bottom of the staircase her voice box was crushed and she was strangled to death. At the time of the victim's death, the parties' 23-year marriage had badly deteriorated and they were living apart pursuant to an order of protection that the victim had obtained because defendant had previously assaulted her and, during the course of that assault, attempted to choke her. After traces of defendant's DNA were found on the blood-stained shirt that the victim was wearing on the day of her death and her DNA was recovered from a blood spot found on a truck that defendant was driving on the night of the attack, defendant was charged by indictment with murder in the second degree, burglary in the first degree, criminal possession of a weapon in the third degree[1] and criminal contempt in the first degree. After trial, defendant was convicted as charged and an

---

1. During their investigation, the police recovered an unloaded .357 Smith and Wesson revolver in a barn located on the marital property.

aggregate prison term of 25 years to life was imposed as his sentence. Defendant now appeals.

Defendant has consistently maintained that he is innocent of any wrongdoing, and on this appeal argues, among other things, that his conviction of these crimes is not supported by legally sufficient evidence, the jury's verdict is against the weight of the credible evidence and evidence was improperly admitted that served to deprive him of a fair trial.[2] We disagree.

Throughout this trial, the prosecution based much of its claim that defendant committed this murder on the fact that circumstantial evidence found at the crime scene strongly suggested that the perpetrator knew the victim, had access to her home and entered it intending to harm her. In that regard, it was established that force was not used to gain entry into the victim's home, nor does it appear that any money or property was forcibly taken from the victim during the attack.[3] In addition, the post-mortem examination confirmed that, while the victim had been battered and bruised during the attack, she was not sexually assaulted. Moreover, the manner of her death— the sheer ferocity of the attack and the fact that the victim died from manual strangulation *after* she was seriously injured and while she lay helpless on the bottom of the staircase—provides compelling corroboration for the prosecution's contention that this was an attack deliberately aimed at the victim by someone who harbored a deep-seated hatred for her.

The evidence at trial established that the only person in the victim's life who had such a motive and posed a genuine threat to her physical well-being at the time of her death was defendant. As previously noted, an order of protection was in place at the time of the murder barring defendant from the marital residence and prohibiting him from having any contact with the victim. It was also established that, in the days leading up to the murder, defendant repeatedly violated the terms of this order and, in retrospect, engaged in conduct that had ominous implications for the victim's welfare and physical safety. For example, on May 12, 2008, some two weeks prior to the murder, defendant was caught on film by a store security camera walk-

2. We note that at trial defendant failed to make a specific motion detailing his claim as to why the evidence was not legally sufficient to support the murder, burglary and criminal contempt charges and, therefore, failed to preserve this claim for our review (*see People v Adamek*, 69 AD3d 979, 980 [2010]; *People v Mann*, 63 AD3d 1372, 1373 [2009], *lv denied* 13 NY3d 861 [2009]; *compare People v Roberts*, 63 AD3d 1294, 1296 [2009]).

3. The victim's purse, which was found by the police in the dining room of her home, had $200 in it.

ing behind the victim as she entered a local grocery store and then leaving the store without making any purchases immediately after the victim had exited the premises. It also appears from the video that the victim, at some point while in the store, realized that defendant was present because she suddenly ends her shopping, abandons her grocery cart and abruptly leaves the premises without making any purchases or carrying any packages. In addition, after his arrest, defendant admitted to his sister that on the night prior to the murder he had been in the vicinity of the marital residence surveilling the victim. This conduct certainly puts in its proper perspective why the victim felt the need to have friends stay overnight with her at the marital residence and why she told them of her mortal fear of defendant. Also, evidence was produced at trial that defendant knew the victim would be alone until 7:00 P.M. on the night she was murdered and, on that date, had keys that gave him ready access to the premises. In addition, defendant was seen later that evening with fresh scratch marks on his arm not long after the attack on the victim had taken place. Finally, the DNA findings provided a link that connected defendant with the crime scene and the victim and, when considered with the other evidence, established his guilt beyond a reasonable doubt and that the verdict was supported by the weight of the credible evidence (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Smith, 63 AD3d 1301, 1303 [2009], lv denied 13 NY3d 862 [2009]).

In making this determination, we have taken into account defendant's arguments made at trial as to the condition of the patio door and the timeline of his activities on the day of the murder, which he claims serve to create a reasonable doubt as a matter of law as to his guilt. However, even if the jury fully embraced defendant's interpretation of this evidence, it still did not make it impossible or even improbable that he committed this crime. Weighing the conflicting testimony and conflicting inferences that flowed from this evidence, and given the deference that is traditionally accorded a jury's credibility determinations, we conclude that "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Levy, 52 AD3d 1025, 1026 [2008]).

We disagree with defendant's contention that it was error for County Court to allow into evidence a description of the circumstances that led to the issuance of the order of protection or to permit testimony regarding statements made by the victim to third parties to the effect that she was afraid of defendant. The

order of protection, as well as its terms and conditions, were admitted to prove an essential element of the criminal contempt charge (*see* Penal Law § 215.51 [b]), and evidence regarding the surrounding circumstances that led to it being issued was relevant in establishing defendant's "motive and intent to assault his victim," as well as to provide "necessary background information" on the status of the victim's relationship with defendant at the time of her murder (*People v Dorm*, 12 NY3d 16, 19 [2009]; *see People v Till*, 87 NY2d 835, 837 [1995]; *People v Colbert*, 60 AD3d 1209, 1212 [2009]; *People v Timmons*, 54 AD3d 883, 885 [2008], *lv denied* 12 NY3d 822 [2009]; *People v Beriguete*, 51 AD3d 939, 940 [2008], *lv denied* 11 NY3d 734 [2008]; *People v Westerling*, 48 AD3d 965, 966 [2008]; *People v Gorham*, 17 AD3d 858, 860 [2005]). Moreover, County Court advised the jury in what context this evidence could be considered and gave appropriate instructions regarding its limited relevance (*see People v Poquee*, 9 AD3d 781, 782 [2004], *lv denied* 3 NY3d 741 [2004]). We also note that the court's decision to admit this evidence was part of a measured effort to achieve an appropriate balance that addressed the legitimate needs of defendant as well as the prosecution and, in that vein, denied the prosecution's request to present other evidence of domestic violence involving defendant and his former wife.

As for the testimony of the witnesses who stayed overnight with the victim to provide her with company and protection, no claim has been made that this arrangement did not exist or that defendant was not aware of it. In fact, defendant does not contend that his wife never made statements—attributed to her by these witnesses—that she feared defendant or that at the time of her death he was not aware that she was deeply afraid of him. Instead, he argues that this testimony and, in particular, any reference to statements made by the victim to these witnesses constituted hearsay and should not have been admitted as evidence at trial. While it is true that these witnesses did describe what the victim had told them about defendant, this testimony was needed to establish why they were staying with the victim overnight at her home and why, instead of sleeping in her own room, the victim insisted on staying on the floor next to her guests while they slept on the living room couch (*see People v Dorm*, 12 NY3d at 19; *People v Till*, 87 NY2d at 837). Moreover, the credibility of these witnesses and the reliability of their testimony has not been seriously questioned, and its relevance to the core issue raised during this trial—defendant's identity as the perpetrator of this brutal crime—is undeniable (*see People v Casper*, 42 AD3d 887, 889-890 [2007], *lv denied* 9 NY3d 990 [2007]; *People v Martinez*, 257 AD2d 410, 411 [1999],

*lv denied* 93 NY2d 876 [1999]; *People v Malizia*, 92 AD2d 154, 160 [1983], *affd* 62 NY2d 755 [1984], *cert denied* 469 US 932 [1984]). As previously noted, defendant does not deny knowing why these witnesses stayed with the victim and her statements made at that time were admissible to demonstrate her state of mind, especially during the period immediately prior to her murder (*see People v Wise*, 46 AD3d 1397, 1398 [2007], *lv denied* 10 NY3d 872 [2008]; *People v Wlasiuk*, 32 AD3d 674, 679-680 [2006], *lv dismissed* 7 NY3d 871 [2006]; *see generally* Prince, Richardson on Evidence § 8-106 [Farrell 11th ed]).

As for his conviction for criminal possession of a weapon, the prosecution was required to prove that defendant exercised dominion and control over the area where the firearm was found (*see* Penal Law § 265.01 [1]; § 265.02 [1]; *People v Manini*, 79 NY2d 561, 573 [1992]; *People v Kirby*, 280 AD2d 775, 779 [2001], *lv denied* 96 NY2d 920 [2001]). Here, defendant undoubtedly had access to the building where and at the time this weapon was recovered, and records produced at trial established not only that he had purchased the weapon, but that he had previously sought to register it on an application for a pistol permit (*see People v Edwards*, 39 AD3d 1078, 1079 [2007]).

We do agree with defendant that the weapons possession charge had no relevance to the other charges in the indictment, and his motion for a severance should have been granted (*see* CPL 200.20 [2] [a]; *compare People v Casiano*, 138 AD2d 892, 894 [1988], *lv denied* 72 NY2d 857 [1988]). Here, no claim has been made by the prosecution that the firearm was used in the attack on the victim or had any connection with the circumstances surrounding her death. However, the jury was repeatedly informed that the firearm was not used in the homicide and that defendant's alleged possession of it had nothing whatsoever to do with whether he was responsible for the victim's murder. Accordingly, we are unwilling to conclude that this charge played any role in the jury's decision to convict defendant of murder (*see People v Williams*, 256 AD2d 138, 138 [1998], *lv denied* 93 NY2d 880 [1999]; *People v Ferringer*, 120 AD2d 101, 111 [1986]).

We also find that it was inappropriate for the prosecutor to make any reference during the voir dire to defendant's right not to testify at trial. These comments were clearly ill-advised and should not have been made. However, County Court reacted appropriately by immediately instructing prospective jurors that they should not draw an adverse inference against defendant should he exercise his constitutional right to elect not to testify. It repeated this instruction throughout the voir dire and reiter-

ated it in its final charge to the jury given prior to it commencing its deliberations. As such, we find that these statements made by the prosecutor did not serve to deprive defendant of a fair trial (*see People v Greene*, 13 AD3d 991, 993 [2004], *lv denied* 5 NY3d 789 [2005]; *People v Halm*, 180 AD2d 841, 843 [1992], *affd* 81 NY2d 819 [1993]) and did not, under all of the circumstances, constitute reversible error (*see People v Crimmins*, 36 NY2d 230, 237 [1975]).

Defendant also claims that photographs from the crime scene—in particular, those of the victim's body—should not have been admitted into evidence because they had limited probative value and were unduly prejudicial. "[P]hotographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant' " (*People v Wood*, 79 NY2d 958, 960 [1992], quoting *People v Pobliner*, 32 NY2d 356, 369-370 [1973], *cert denied* 416 US 905 [1974]). Here, the photographs, while graphic and disturbing, did corroborate the prosecution's principal contention that this attack on the victim and, in particular, her manual strangulation was not a random act of violence but, instead, the end result of an unbridled fit of anger (*see People v Wright*, 38 AD3d 1004, 1006-1007 [2007], *lv denied* 9 NY3d 853 [2007]; *People v Blanchard*, 279 AD2d 808, 811 [2001], *lv denied* 96 NY2d 826 [2001]). In addition to documenting the nature and extent of the victim's injuries, the photographs served to accurately depict the location of her body in the marital home when it was discovered by her neighbors. Moreover, County Court repeatedly admonished the jury to view the photographs "objectively, without emotion" and consider them only as they were relevant to the issues that had been raised at trial (*see People v Ford*, 43 AD3d 571, 574 [2007], *lv denied* 9 NY3d 1033 [2008]). Under the circumstances, the court's decision to admit these photographs as evidence and have them shown to the jury did not constitute an abuse of its discretion (*see People v Alvarez*, 38 AD3d 930, 931-932 [2007], *lv denied* 8 NY3d 981 [2007]; *People v Mastropietro*, 232 AD2d 725, 726 [1996], *lv denied* 89 NY2d 1038 [1997]).

Finally, defendant's claim that his sentence was the result of County Court's bias is wholly unpersuasive, especially when viewed in light of the particularly heinous nature of the crimes for which he stands convicted (*see People v Berrios*, 176 AD2d 547, 548-549 [1991], *lv denied* 79 NY2d 824 [1991]).

To the extent not specifically addressed herein, defendant's remaining contentions have been reviewed and found to be lacking in merit.

Cardona, P.J., Mercure, Spain and Garry, JJ., concur. Ordered that the judgment is affirmed.