■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAIMAN H. BURKETT, Appellant. [957 NYS2d 417]—

Spain, J.

Defendant's convictions were not against the weight of the credible evidence. Even were we to conclude that an acquittal would not have been unreasonable, upon weighing the conflicting testimony while viewing it in a neutral light, we are persuaded that the jury was fully justified in finding defendant guilty beyond a reasonable doubt (*see People v Danielson,* 9 NY3d 342, 348 [2007]; *People v Romero,* 7 NY3d 633, 636 [2006]; *People v Bleakley,* 69 NY2d 490, 495 [1987]). Specifically, citing the lack of eyewitnesses to the strangulation or a confession, defendant claims that the proof was inadequate to establish either his identity as the killer, his intent to kill (*see* Penal Law § 125.25 [1]) or his intent to use the knife unlawfully against a police officer (*see* Penal Law §§ 265.01 [2]; 265.02 [1]).

Defendant's unlawful purpose in displaying the knife was readily inferable from his threatening and aggressive conduct during his encounter with police (*see People v Jackson,* 38 AD3d 1052, 1054 [2007], *lv denied* 8 NY3d 986 [2007]). Defendant refused repeated police directives to drop the knife and when a police officer approached trying to calm him, defendant advanced several steps toward the officer, forcing him to draw his weapon; defendant repeatedly warned emergency personnel not to come any closer, indicating that they would not be permitted to go inside, while brandishing the knife with the blade pointing up, instilling fear in the officers, and he advanced at them a second time. The foregoing established defendant's unlawful intent in possessing the knife (*see id.; see also People v Purvis,* 90 AD3d 1339, 1341 [2011], *lv denied* 18 NY3d 997 [2012]).

With regard to defendant's murder conviction, his identity as the perpetrator was established by his presence at the scene, his blood throughout the first floor and basement, and the presence of DNA consistent with defendant's DNA on the victim's neck.[1] The victim's son, who did not witness or hear the murder, testified that he observed defendant washing his hands and a knife in the first floor bathroom at the time that emergency personnel arrived. There was no sign of forced entry, supporting the conclusion that Parker had admitted defendant to her home as

---

1. The victim's current boyfriend and her former boyfriend, the father of her children, were each excluded as DNA contributors and no evidence pointed to either of them or anyone else as the perpetrator.

she had done in the past. Indeed, additional evidence persuasively established "that the only person in the victim's life who had such a motive and posed a genuine threat to her physical well-being at the time of her death was defendant" (*People v Thibeault*, 73 AD3d 1237, 1239 [2010], *lv denied* 15 NY3d 810 [2010], *cert denied* 562 US —, 131 S Ct 1691 [2011]). Likewise, the manner of death firmly established that his conscious objective was to kill Parker (*see People v Steinberg*, 79 NY2d 673, 682 [1992]; *People v Scott*, 47 AD3d 1016, 1017-1019 [2008], *lv denied* 10 NY3d 870 [2008]; *see also People v Smith*, 79 NY2d 309, 315 [1992]; *People v Barnes*, 50 NY2d 375, 381 [1980]). The medical examiner testified that the victim would have lost consciousness in about 15 seconds if sufficient pressure were applied to her neck to completely cut off her blood supply, and that death would have occurred only after an additional two to three minutes of continuous applied pressure. Such violent, protracted conduct by defendant for several minutes after Parker's loss of consciousness in continuing to strangle her strongly supported the jury's conclusion that his conscious objective was to kill and not merely subdue or injure her.[2]

Moreover, following a detailed *Molineux* pretrial hearing, County Court properly admitted limited testimony regarding defendant's prior abusive, threatening and controlling behavior against Parker and a former girlfriend, which was relevant and probative of several disputed issues other than defendant's criminal propensity, including defendant's identity as the perpetrator and his intent and motive in strangling Parker, and provided necessary background information regarding the nature of their relationship, which Parker had tried to terminate and the context in which defendant's conduct occurred (*see People v Dorm*, 12 NY3d 16, 19 [2009]; *People v Alvino*, 71 NY2d 233, 242 [1987]; *People v Thibeault*, 73 AD3d at 1240-1241; *People v Gorham*, 17 AD3d 858, 860-861 [2005]; *People v Poquee*, 9 AD3d 781, 781 [2004], *lv denied* 3 NY3d 741 [2004]). Indeed, "[p]rior bad acts in domestic violence situations are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident" (*People v Westerling*, 48 AD3d 965, 966 [2008]).

---

2. Defendant did not raise the affirmative defense of extreme emotional disturbance (*see* Penal Law § 125.25 [1] [a]) and, contrary to his claims, his self-inflicted superficial wounds and behavior when police arrived were more suggestive of an attempt to feign despair and fabricate an exculpatory crime scenario and did not undermine a finding regarding defendant's ability to form intent.

In their *Molineux* proffer, the People requested testimony from seven witnesses regarding more than 12 instances of defendant's controlling and threatening conduct toward Parker and other former girlfriends. The record reflects that County Court addressed the specific instances to be testified to by each proposed witness, precluding much of the proffer, including all or parts of the testimony of two of defendant's ex-girlfriends and limiting or excluding the testimony of three of the victim's close girlfriends, and allowed evidence of only one of two domestic violence reports that Parker had filed in 2008 against defendant. The court also precluded altogether evidence consisting of voice-mail messages left by Parker for defendant and threatening statements made by defendant to police the next day because the potential for undue prejudice outweighed their probative value. While the court did not—as to each witness—explicitly weigh the probative value of each piece of evidence against its potential for undue prejudice, our review of the record discloses that the court addressed the potential testimony of each witness, discussed its relevance, considered case law, and gave specific reasons for allowing, limiting or excluding certain testimony based upon the *Molineux* exceptions, the temporal proximity of the events described or the potential for prejudice. Thus, contrary to defendant's claim, the *Molineux* hearing reflects "a measured effort to achieve an appropriate balance" (*People v Thibeault*, 73 AD3d at 1241) in that "the court, defense counsel and the prosecutor were all aware of the proper legal standard and, after considering separately each bad act sought to be introduced by the People, the court excluded [many] bad acts after finding that the prejudicial effect outweighed the probative value" (*People v Nash*, 87 AD3d 757, 759 [2011], *lv denied* 17 NY3d 954 [2011]; *compare People v Wlasiuk*, 32 AD3d 674, 676-677 [2006], *lv dismissed* 7 NY3d 871 [2006]). Moreover, the court in its charge to the jury gave an appropriate limiting instruction (*see People v Dorm*, 12 NY3d at 19).[3]

The evidence, including that properly admitted pursuant to *Molineux*, provided further credible evidence establishing defendant's identity, intent and motive in murdering Parker, as well as the nature and status of their relationship at that time (*see People v Thibeault*, 73 AD3d at 1239-1241). The testimony of Parker's two long-term girlfriends, new boyfriend and son

---

**3.** While we have said that a court should ordinarily give a contemporaneous limiting instruction at the time uncharged bad act evidence is elicited (*see People v Westerling*, 48 AD3d at 967; *People v Gorham*, 17 AD3d at 861 n; *see also People v Santarelli*, 49 NY2d 241, 254 [1980]), no request for such an instruction was made here.

established that Parker had dated defendant on and off for about six years and that, in late 2008 and early 2009 leading up to her death, Parker had broken it off but defendant had refused to allow Parker to do so, repeatedly calling or showing up at her work place or at her home in the middle of the night after being told not to come and that she wanted to finally end their relationship. The testimony established that defendant was verbally abusive, jealous of her new boyfriend and had made threats against him and Parker and wanted to move in with her and have a family. Parker was fearful of defendant and had taken safety measures, but continued to answer his calls and admit him to her home, including late at night, in an effort to terminate their relationship on good terms and out of concern that he would wake her neighbors or children or would harm her family, home or car.[4]

We also find no error in that part of County Court's ruling permitting defendant's former girlfriend to testify to an incident in 2001, after she had terminated their relationship, in which defendant snuck into her home and disabled her phone; unsuccessful in his attempts to persuade her to resume their relationship, defendant assaulted and then choked her to the point of unconsciousness in the presence of their toddler and thereafter refused to allow her to leave. This evidence, while prejudicial, revealed a distinctive pattern of criminal conduct toward women who had attempted to sever ties with him and was properly admitted to establish defendant's identity and motive as Parker's murderer (*see People v Doyle*, 48 AD3d 961, 964 [2008], *lv denied* 10 NY3d 862 [2008]). Significantly, Parker's son testified that he had intervened during an incident months prior to her death in which defendant had choked the victim in her bedroom. In view of all of the foregoing, we find that the verdict was, in all respects, supported by the weight of credible evidence (*see People v Danielson*, 9 NY3d at 348).

Defendant's claim that County Court erred in failing to charge the additional lesser included offense of manslaughter in the second degree is foreclosed, because defendant was in fact convicted of second degree murder as charged in the indictment and the jury never reached the next lesser included offense of manslaughter in the first degree which was included in the court's charge (*see People v Cordato*, 85 AD3d 1304, 1307-1308

---

4. While some of the background information consisted of hearsay statements of the victim or was based thereon, no hearsay objections were raised during trial but, in any event, the testimony was admissible on the issue of the victim's state of mind related to and fear of defendant and to explain her behavior toward him (*see People v Thibeault*, 73 AD3d at 1241-1242).

[2011], *lv denied* 17 NY3d 815 [2011]; *People v Waugh*, 52 AD3d 853, 855 [2008], *lv denied* 11 NY3d 796 [2008]). "[W]here a court charges the next lesser included offense [manslaughter first] of the crime alleged in the indictment [murder second], but refuses to charge lesser degrees than that, . . . defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses [manslaughter second]" (*People v Boettcher*, 69 NY2d 174, 180 [1987]).

Given the brutal and senseless nature of this murder, which deprived two children of their mother, as well as defendant's lengthy criminal history, lack of remorse and pattern of domestic violence against women, we find no extraordinary circumstances or abuse of discretion in the sentence imposed by County Court. Finally, restitution was authorized for the victim's funeral expenses paid in part by the Office of Victim Services and in part by her former boyfriend (the father of her surviving children), as the victim's representative (*see* Penal Law § 60.27 [1], [4] [b]; Executive Law § 621 [6]; *People v Morrishaw*, 92 AD3d 1088, 1088-1089 [2012], *lv denied* 18 NY3d 996 [2012]; *People v Robinson*, 262 AD2d 795, 795 [1999], *lv denied* 93 NY2d 1045 [1999]; *People v Yong Ho Han*, 220 AD2d 632, 633 [1995]).

Defendant's remaining claims lack merit.

Mercure, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

