People v Greenfield (2018 NY Slip Op 08367)





People v Greenfield


2018 NY Slip Op 08367


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

107540

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
DAVID GREENFIELD, Appellant.

Calendar Date: October 19, 2018

Before: Lynch, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


Linda B. Johnson, East Greenbush, for appellant.
Joel E. Abelove, District Attorney, Troy (Jacob B. Sher of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered December 18, 2014, upon a verdict convicting defendant of the crime of attempted murder in the second degree.
On July 8, 2010, shortly before 6:00 a.m., defendant climbed on top of his long-term girlfriend as she lay half asleep in their bed and repeatedly stabbed her with two kitchen knives, thereby inflicting a total of eight wounds over her neck, chest and shoulder. Defendant was subsequently charged by indictment with, as relevant here, attempted murder in the second degree, assault in the first degree and assault in the second degree. Following a jury trial, defendant was convicted of attempted murder in the second degree and, in March 2011, he was sentenced as a second felony offender to 25 years in prison, followed by five years of postrelease supervision. On appeal, this Court reversed the judgment of conviction on the ground that "County Court committed reversible error when it denied [defendant's] challenge for cause to [a] prospective juror" (112 AD3d 1226, 1228 [2013], lv denied 23 NY3d 1037 [2014]). Following a retrial, defendant was again convicted of attempted murder in the second degree and sentenced to a prison term of 25 years and five years of postrelease supervision. Defendant appeals, and we affirm.
Contrary to defendant's contention, we find that the verdict is supported by legally sufficient evidence and is not against the weight of the evidence. A legal sufficiency challenge requires this Court to evaluate whether the evidence — viewed in the light most favorable to the People — provides "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal citation omitted]; see People v Aleynikov, 31 NY3d 383, 395-396 [2018]). In contrast, in determining whether a verdict is supported by the weight of the evidence, we first consider whether a different verdict would have been unreasonable and, if it would not, we "weigh the relative probative force of conflicting [*2]testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]; see People v Lang, 164 AD3d 963, 966 [2018]; People v Novak, 148 AD3d 1352, 1354 [2017], lv denied 29 NY3d 1084 [2017]). A conviction for attempted murder in the second degree requires proof that, with intent to cause the death of another, the defendant engaged in conduct that tended to effect the commission of that crime (see Penal Law §§ 110.00, 125.25 [1]; People v Fernandez, 88 NY2d 777, 783 [1996]; People v Hamilton, 127 AD3d 1243, 1243 [2015], lvs denied 25 NY3d 1164 [2015]).
Defendant does not dispute that, without provocation, he straddled the victim in their bed as she lay half asleep on her back and repeatedly stabbed her with a butcher knife and a steak knife that he had retrieved from their kitchen. However, he argues that the proof did not establish that he intended to kill the victim or that his conduct tended to effect murder because he had the means, ability and opportunity to kill the victim, but did not do so and, in fact, called 911 seeking emergency medical attention for the victim's injuries. We disagree.
The evidence — including the victim's testimony, statements that defendant made in a recorded 911 call and defendant's written statement to police — established that defendant first stabbed the victim in the neck, cutting her external jugular vein, and thereafter stabbed her repeatedly in and around her chest. Defendant asserted in his written statement that, after he stabbed the victim "just below the throat," he "started stabbing her fast, six or seven times below the throat" and that he eventually stopped when he had "enough or realized that it wasn't doing anything." In both the 911 call and his written statement, defendant stated that he and the victim had been having "problems" for quite some time. Defendant also asserted in his written statement that he had previously tried to end his relationship with the victim without success, that he "figured it was just as easy to stab her" and that, "[i]f it was worse[, he] would still have probably called [911 because] it would have been stupid to run." The emergency room physician who treated the victim testified that, because there was a risk of ongoing blood loss, the cut to the victim's external jugular vein had the potential to be life threatening. Considering the circumstances, including the place and manner in which defendant stabbed the victim, we find that the evidence — viewed in the light most favorable to the People — presented a valid line of reasoning and permissible inferences from which a rational juror could conclude that defendant intended to kill the victim and came dangerously close to doing so (see People v Greenfield, 112 AD3d at 1226-1227; People v Cooley, 50 AD3d 1548, 1549 [2008], lv denied 10 NY3d 957 [2008]; People v King, 293 AD2d 815, 816 [2002], lv denied 98 NY2d 698 [2002]). Furthermore, while a different verdict would not have been unreasonable, viewing the evidence in a neutral light, we do not find the verdict to be against the weight of the evidence (see People v Townsend, 144 AD3d 1196, 1196-1197 [2016], lv denied 28 NY3d 1189 [2017]; People v Cooley, 50 AD3d at 1549; People v King, 293 AD2d at 816).
Defendant also challenges the admission of certain photographs — specifically, People's exhibit Nos. 5-7 and 9-12 — into evidence on the basis that they were unduly prejudicial and of limited probative value. Initially, by failing to object at the time of their admission into evidence, defendant failed to preserve his challenge to exhibit Nos. 10-12, which depicted the knives used by defendant to stab the victim (see CPL 470.05 [2]; People v Valencia-Noralez, 127 AD3d 1113, 1113 [2015], lv denied 25 NY3d 1209 [2015]; People v Wright, 38 AD3d 1004, 1006 [2007], lv denied 9 NY3d 853 [2007]). The remaining challenged photographs were certainly graphic in nature, as they depicted the bloody scene left in the apartment in the aftermath of defendant's attack. Nevertheless, the photographs were relevant to the material issue of defendant's intent and helped to illustrate or elucidate the extent and seriousness of the victim's injuries, as well as the layout of the apartment shared by defendant and the victim (see People v Thibeault, 73 AD3d 1237, 1243 [2010], lv denied 15 NY3d 810 [2010], cert denied 562 US 1293 [2011]; People v Mastropietro, 232 AD2d 725, 726 [1996], lv denied 89 NY2d 1038 [1997]; People v Wilson, 168 AD2d 696, 697-698 [1990]). Importantly, the photographs were not introduced for the sole purpose of "'arous[ing] the emotions of the jury and to prejudice . . . defendant'" (People v Wood, 79 NY2d 958, 960 [1992], quoting People v Pobliner, 32 NY2d 356, 370 [1973], cert denied 416 US 905 [1974]). Moreover, prior to publishing the photographs to the jury, County Court appropriately instructed the jurors to refrain from making any [*3]emotional judgments based on the photographs (see People v Timmons, 78 AD3d 1241, 1245 [2010], lvs denied 16 NY3d 833, 837 [2011]; People v Thibeault, 73 AD3d at 1243). Accordingly, we find no abuse of discretion in County Court's admission of exhibit Nos. 5-7 and 9 into evidence (see People v Powell, 115 AD3d 998, 999-1000 [2014], lv denied 23 NY3d 1024 [2014]; People v Alvarez, 38 AD3d 930, 931-932 [2007], lv denied 8 NY3d 981 [2007]).
Additionally, defendant argues that he was deprived of the effective assistance of counsel. Defendant first asserts that, given the evidence and because his defense hinged on the question of intent, defense counsel should have conducted an investigation into his mental health to determine if a viable psychiatric defense was available to him. However, the record does not disclose whether and to what extent, if any, defense counsel investigated the possibility of a psychiatric defense nor does it reveal defense counsel's decision-making process regarding whether to present such a defense. As such, this claim is more properly the subject of a CPL article 440 motion (see People v Vickers, 156 AD3d 1236, 1238 [2017], lvs denied 31 NY3d 980, 988 [2018]; People v Perry, 154 AD3d 1168, 1171 [2017]; see generally People v Oliveras, 21 NY3d 339 [2013]). Defendant's further criticism of defense counsel does not, by itself, constitute ineffective assistance of counsel. Defendant claims that defense counsel should have objected to the admission of his written statement into evidence as having been made involuntarily. However, any such objection would have had little to no likelihood of success given that, following a Huntley hearing before the first trial, County Court found the written statement to have been voluntary and, thus, admissible (see People v Evans, 94 NY2d 499, 504-505 [2000]; People v Nieves, 67 NY2d 125, 137 & n 5 [1986]; People v Phelan, 82 AD3d 1279, 1282 [2011], lv denied 17 NY3d 799 [2011]). Moreover, defense counsel conducted a thorough cross-examination of the detective who interviewed defendant and transcribed his statement, as well as the additional police officer present for the interview, and through those cross-examinations was able to highlight, among other weaknesses in the People's case, defendant's inability to read and approve his transcribed statement without reading glasses.
Defendant's remaining contentions warrant little discussion. In the absence of a motion for recusal or specific objection to County Court's conduct, defendant failed to preserve his claim that County Court exhibited bias against him in the presence of the jury by stating, during an evidentiary ruling, that defense counsel was "wrong" (see People v Prado, 4 NY3d 725, 726 [2004]; People v Holmes, 151 AD3d 1181, 1184 [2017], lv denied 29 NY3d 1128 [2017]; People v Lebron, 305 AD2d 799, 800 [2003], lv denied 100 NY2d 583 [2003]). In any event, even if preserved, our review of the record, including the circumstances under which County Court made the complained-of comment, does not support defendant's claim of judicial bias (see People v Holmes, 151 AD3d at 1184; People v Lebron, 305 AD2d at 801; People v Travis, 273 AD2d 544, 546 [2000]). Finally, given the violent nature of the crime, the lasting impact to the victim and defendant's lengthy criminal history, which includes three felony convictions and 12 misdemeanor convictions, we do not find defendant's 25-year prison sentence to be harsh or excessive (see People v Townsend, 144 AD3d at 1197; People v King, 293 AD2d at 815).
Lynch, J.P., Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.