■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GLENN LEWIS, Appellant. [714 NYS2d 830] —Spain, J. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered January 24, 1996, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree.

Following a jury trial, defendant was convicted of attempted

murder in the second degree and related charges for his conduct on Lark Street in the City of Albany on July 2, 1994 in shooting Yusef Oliver in the head the day after the two had fought over the ownership of a bicycle. At trial, three eyewitnesses and defendant's companion testified that defendant and his companion arrived on a bicycle, defendant approached the victim who was standing outside a store amidst a group of people, and defendant shot the victim at close range in the head. Defendant then took off his shirt and gave it to his companion and the two fled on the victim's bicycle. Nearby Albany police officers heard the gunshots and immediately responded and, after speaking with witnesses, communicated a description of the shooter which was broadcast over the police radio. The shooting suspect was described as a black male wearing an orange T-shirt and black shorts riding a black bicycle eastbound on a particular street.

Within minutes of hearing the broadcast and proceeding in the described direction of the fleeing suspect, another police officer riding in a marked vehicle observed the shirtless defendant riding a bicycle carrying a passenger who was holding an orange cloth. When approached by the police vehicle, defendant attempted to elude police and flee on the bicycle, defendant's passenger discarded the orange cloth and then defendant and his companion fled on foot. Defendant was quickly apprehended at gunpoint and the discarded items were retrieved and determined to be an orange T-shirt and a handgun. Defendant was arrested, advised of his *Miranda* rights and promptly identified as the shooter by four of the eyewitnesses at a "showup" identification procedure. Within an hour defendant gave a written statement in which he, *inter alia*, admitted approaching the victim with a gun, but claimed that the victim "charged" him and the gun "just went off."

In a well-reasoned written decision, County Court denied defendant's motions to suppress his statements to police and the gun as well as the identification testimony which followed the showup identifications. Upon his convictions, defendant now appeals raising issues related to the denial of his suppression motions, the identification testimony and the legal sufficiency of the trial evidence.

We affirm, determining that none of defendant's contentions for reversal are meritorious. Initially, defendant contends that his statements to police and the discarded gun should have been suppressed as the products of an illegal police pursuit, detention and arrest. We agree with County Court's analysis that, under the circumstances, the pursuing police officer who,

within minutes of hearing the broadcast describing the shooting suspect, observed defendant riding a bicycle approximately one-eighth to one-quarter mile from the crime scene certainly had a founded suspicion that criminal activity was afoot and was entitled to interfere with defendant to the extent necessary to gain explanatory information (*see, People v Hollman,* 79 NY2d 181, 184-185; *People v De Bour,* 40 NY2d 210, 223; *People v Hamilton,* 252 AD2d 826, 828, *lv denied* 92 NY2d 982). Further, in this context, defendant's evasive actions with the bicycle and his flight furnished reasonable suspicion that he had committed a crime such that a police pursuit and detention were justified (*see, People v Matienzo,* 81 NY2d 778, 780; *People v Martinez,* 80 NY2d 444, 447-448; *People v De Bour, supra,* at 223; *People v Hamilton, supra; People v Defares,* 209 AD2d 875, *lv denied* 84 NY2d 1030). The officer justifiably relied on the sufficiently specific radio description of the shooter and properly pursued defendant, a black male wearing black shorts, riding a dark bicycle in close temporal and spatial proximity to the crime scene, heading in the direction taken by the shooter and carrying a passenger holding an orange cloth that matched the orange T-shirt observed on the shooter. The prompt retrieval of the discarded T-shirt and gun then provided probable cause for defendant's arrest, as the abandonment of these items was not in response to any unlawful police conduct (*see, People v Matienzo, supra,* at 780; *People v Martinez, supra,* at 448-449; *People v Leung,* 68 NY2d 734, 736-737; *People v De Bour, supra,* at 223; *People v Defares, supra,* at 877; *see also, People v Ramirez-Portoreal,* 88 NY2d 99, 110-111). Thus, defendant was not entitled to suppression of these items.

Defendant's sole contention regarding his written statement to police is that it was the product of an illegal detention. As we have concluded that the pursuit, detention and arrest of defendant were lawful police conduct, this claim is meritless. Further, the testimony at the suppression hearing established that *Miranda* warnings were read to defendant at the police station a second time just prior to his giving the written statement and defendant has not otherwise challenged its voluntariness. Consequently, defendant's motion to suppress his written statement was properly denied.

Regarding defendant's claim that County Court improperly denied suppression of identification testimony, we disagree. The evidence adduced at the suppression hearing demonstrated that after defendant was apprehended by police a short distance from the crime scene, the eyewitnesses were promptly driven to the showup which was conducted within 15 minutes

of the crime, sufficiently establishing the reliability of the identification (*see, People v Ortiz*, 90 NY2d 533, 537; *People v Duuvon*, 77 NY2d 541, 544; *People v Brnja*, 50 NY2d 366, 372; *People v Miles*, 203 AD2d 620, *lvs denied* 84 NY2d 909, 912). As the suppression court noted, "[t]he factual circumstances represent one unbroken chain of events—crime, escape, apprehension and identification[s]—all of which occurred in rapid sequence within a limited geographic area" (*see, People v Duuvon, supra*, at 545). Neither the fact that defendant was handcuffed nor any other aspect of the identification procedure rendered it impermissibly suggestive (*see, People v Carbonaro*, 162 AD2d 459, *lv denied* 76 NY2d 891).

Further, we find no error by County Court in permitting the eyewitnesses to testify at trial to having previously identified defendant at the showup (*see*, CPL 60.30; *see also, People v Carter*, 249 AD2d 773, *lv denied* 92 NY2d 923). Additionally, as the eyewitnesses were authorized to and did in fact testify at trial about their previous identifications of defendant, the prosecutor's reference in her opening statement to these previous identifications constituted a description of evidence to be presented and not improper bolstering (*see, People v Williams*, 157 AD2d 759, 760, *lv denied* 76 NY2d 744).

Viewing the evidence in the light most favorable to the People, we find that the evidence was legally sufficient to sustain the jury's guilty verdict on the attempted intentional murder and assault counts (*see, People v Contes*, 60 NY2d 620). Several eyewitnesses testified that defendant shot the victim in the head at close range, and two of them also testified that defendant grabbed the victim's head or neck prior to shooting him. This testimony certainly provided sufficient evidence to permit the inference that defendant intended to kill the victim, as required to satisfy Penal Law § 125.25 (1) (*see, People v Holmes*, 260 AD2d 942, *lv denied* 93 NY2d 1020; *see also, People v Vigliotti*, 270 AD2d 904, *lv denied* 95 NY2d 839).

Finally, we disagree with defendant's argument that the evidence was insufficient to establish that the victim sustained a serious physical injury to support the conviction of assault in the first degree (*see*, Penal Law § 10.00 [10]; § 120.10 [1]). The evidence adduced at trial established that efforts to remove the bullet fragment lodged into the soft tissue in the victim's neck were unsuccessful because it was too deeply imbedded. The victim testified to memory loss, headaches and intense pain which persisted at the time of trial a year after the shooting. In our view, the victim's injuries constituted sufficient protracted impairment of health to establish serious physical

injury as contemplated by Penal Law § 120.10 (1) (*see, People v Kern*, 75 NY2d 638, 658, *cert denied* 498 US 824; *People v Moreno*, 233 AD2d 531, *lv denied* 89 NY2d 944; *People v Meneses*, 195 AD2d 527; *People v Staunton*, 190 AD2d 703, *lv denied* 81 NY2d 977; *People v Braxton*, 189 AD2d 888, *lv denied* 81 NY2d 1011; *People v Beatty*, 134 AD2d 602, *lv denied* 71 NY2d 892).

We have examined defendant's remaining claims for reversal and conclude that they are lacking in merit.

Mercure, J. P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.