■ The People of the State of New York, Respondent, v Khuong Dinh Pham, Appellant. [818 NYS2d 674]—

Lahtinen, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered April 29, 2004, upon a verdict convicting defendant of the crimes of assault in the first degree, attempted robbery in the first degree and attempted coercion in the first degree.

Late on the evening of February 8, 1998, as two employees of the Olive Garden Restaurant in the Town of Vestal, Broome County, left work after the restaurant closed, they were confronted by three men wearing ski masks and brandishing handguns. The three men, who were described by the victims as being of Asian ancestry and speaking an "Asian" language, had exited a white car driven by a fourth individual and they ordered the two employees to get in the car. However, one employee fled and an assailant fired four shots at him, two of which struck him, one in his right thigh and one above his left knee. The victim was nevertheless able to continue and he summoned help from a passing taxi. The assailants fled the scene in the car.

Nearly five years later, defendant (a resident of Virginia) and two others, Souksavath Soukthavong and Tommy Segmanivong, were charged together in a single indictment with the crimes of attempted robbery in the first degree, attempted coercion in the first degree and assault in the first degree for their alleged involvement in the Olive Garden incident. Segmanivong ostensibly could not be located, but defendant and Soukthavong were tried together. The first trial ended after four days of testimony with County Court granting the motion of defendant and Soukthavong for a mistrial when it became apparent that the People had committed what the trial court characterized as an egregious *Brady* violation.

Before the second trial commenced, defendant moved to dismiss the indictment on the ground that a second trial would violate double jeopardy. The motion was denied and the trial of defendant and Soukthavong proceeded. The jury found Soukthavong not guilty of all charges, but returned a verdict of guilty on all charges as to defendant. County Court sentenced him to concurrent prison terms of 10 to 20 years for assault, 7 to 14 years for attempted robbery, and 1 to 3 years for attempted coercion. Defendant appeals.

Defendant initially argues that the proof regarding his participation in the criminal conduct was supported by neither legally sufficient evidence nor the weight of the evidence. In

reviewing legal sufficiency, the evidence is considered in the light most favorable to the prosecution (*see People v Rossey*, 89 NY2d 970, 971 [1997]; *People v Lopez*, 9 AD3d 692, 694 [2004]) and must be upheld if there exists "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]; *see People v Haight*, 19 AD3d 714, 715 [2005], *lv denied* 5 NY3d 806 [2005]). In a weight of the evidence analysis, if a different verdict would not have been unreasonable, we "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, *supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Watrous*, 270 AD2d 651, 653 [2000]).

There was evidence at trial that the plan to rob the Olive Garden germinated in December 1997 when Christopher Claus, an employee at Olive Garden, began plotting with an acquaintance, Andrew Jackson. Jackson recruited Soukthavong, who met with Claus and Jackson and stated that he knew individuals from outside the area who would assist them. Claus and Jackson claimed that they had a change of heart and dropped out of the plan following their meeting with Soukthavong. Timothy Talerico, a friend of Soukthavong, testified that on the evening of the attempted robbery, he was at a gathering of at least 10 Asian individuals—many of whom he did not recognize—at Soukthavong's apartment, that one of the individuals (i.e., Segmanivong) indicated through slang that he was going to engage in a violent activity in the Town of Vestal, and that Segmanivong, Sak Nyraprong and some others from the group then got into a white car, which resembled the stolen Oldsmobile used in the crime. The next night, Talerico heard Segmanivong state that someone in their group had used his gun during the prior night's activities. Talerico was not able, however, to identify defendant as one of the individuals at Soukthavong's apartment that night.

Nevertheless, other evidence linked defendant to the criminal events. During the course of the investigation, police had traveled to Virginia to interview defendant and he denied ever being in Broome County. Yet, about three weeks before the incident, he had been issued a speeding ticket in the Town of Vestal. Moreover, on the day after the attempted robbery, police had

responded to a harassment call at Soukthavong's apartment and the person they interviewed was defendant, who produced photo identification and told the officer that he had been in town visiting for about a week. Even more significant was the DNA evidence linking defendant to the crime. On the evening of the attempted robbery and after the police had been summoned, the white car used in the crime was found abandoned near the scene. The contents of the car included a ski mask. Police were able to obtain DNA evidence from the mask which matched defendant's DNA. The evidence at trial presented a path of proof pointing to defendant's participation in the criminal activity and there is a valid line of reasoning and permissible inferences to uphold the jury's determination on all counts.

A different verdict certainly would not have been unreasonable and, thus, we will weigh the evidence. In such regard, we note there was evidence that Nyraprong had reportedly stated to an informant that he fired the shots at the victim and Segmanivong had admitted to police his involvement in the incident. Defendant also presented two DNA experts. While all experts acknowledged that defendant's DNA was on the mask, they also all agreed that there was no way of determining from the DNA when defendant came in contact with the mask. One of defendant's experts stated that further samples from the mask revealed DNA from at least four individuals, and that Sareoum Sok was one such individual and Nyraprong could not be ruled out as a possible contributor. While the weighing of this evidence and all the proof presented at trial reveals that this was, indeed, a difficult case, we nevertheless are not persuaded that the weight of the evidence does not support the jury's conclusion that defendant was a participant in this criminal activity.

Next, we address defendant's contention that the victim of the shooting did not sustain a serious physical injury and, thus, the proof was not legally sufficient to sustain the conviction of assault in the first degree. Assault in the first degree requires proof of, among other things, "serious physical injury" (Penal Law § 120.10 [4]), which is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). Although the victim was shot in both legs, there was no damage to a bone or to his arterial system. The treating physician testified, however, that the victim sustained "significant damage to the musculature in both thighs" and that such an injury can cause permanent

complications, including a limp, weakness, loss of stamina and pain. The victim, testifying nearly six years after the shooting, related that he still cannot stand for long periods of time, one leg gets tired, he has developed back problems requiring frequent visits to a chiropractor because one leg compensates for the other, and his injuries occasionally affect his current job as a truck driver. He had an evaluation five years after the shooting and reportedly had 10% permanency in one leg at that time. The medical evidence and testimony of the victim sufficiently established a protracted impairment of the victim's health (*see People v Graham*, 297 AD2d 579, 580 [2002], *lv denied* 99 NY2d 535 [2002]; *People v McDuffie*, 293 AD2d 287, 287 [2002], *lv denied* 98 NY2d 699 [2002]; *People v Lewis*, 277 AD2d 603, 606-607 [2000], *lv denied* 95 NY2d 966 [2000]; *cf. People v Gray*, 30 AD3d 771 , 772 [2006] [no serious physical injury when all symptoms resolved in less than four months]).

Defendant argues that County Court committed reversible error when it precluded him from introducing evidence about his reputation. "The principle has long been that in a criminal prosecution, the accused may introduce evidence as to his [or her] own good character to show that it is unlikely that he [or she] committed the particular offense charged" (*People v Aharonowicz*, 71 NY2d 678, 681 [1988] [citations omitted]; *see People v Bouton*, 50 NY2d 130, 138-140 [1980]). Nearly six years passed from when the crime was committed until the trial. During the four years before the trial, defendant had a steady job, he was well-liked by his employer, he was married, he was the father of a young child, and he had purchased a home. At the time the crime was committed, he was 18 years old and he had, among other problems, been involved with juvenile proceedings in Virginia. As this case reflects, reputations can change with the passage of time and circumstances (*cf. People v Ayala*, 118 AD2d 790, 791 [1986]; *People v Sansa*, 169 App Div 145, 146 [1915]; Prince, Richardson on Evidence § 4-403, at 165 [Farrell 11th ed] ["Evidence of the defendant's reputation . . . is admissible if not too remote"]). There is no indication that the two character witnesses that defendant wished to produce had any knowledge of his reputation from before or near the time when the crimes were committed. Accordingly, we find no reversible error in excluding the character evidence.

Nor are we persuaded by defendant's double jeopardy argument. "[W]hen the defendant requests or consents to a mistrial, double jeopardy typically erects no barrier to a retrial" in the absence of narrow exceptions such as "when the prosecution deliberately provokes a mistrial" (*Matter of Davis v Brown*, 87

NY2d 626, 630 [1996]). Here, County Court offered a way to remedy the prosecution's failure in the first trial to timely turn over *Brady* material, including time to review such evidence and an opportunity to reexamine witnesses. Defendant, instead, moved for a mistrial and the motion was granted. There was no showing that the prosecution deliberately provoked the mistrial. Under such circumstances, double jeopardy did not bar the second trial.

We are persuaded, however, that the unique and narrow circumstances of this case warrant a reduction of defendant's sentence in the interest of justice (*see People v Wilt*, 18 AD3d 971, 973 [2005], *lv denied* 5 NY3d 771 [2005]). Numerous factors influence our decision in such regard. As stated above, since shortly after this crime was committed, defendant has lived a productive and apparently respectable life as an employee, spouse, parent and homeowner (*see People v Holmes*, 304 AD2d 1043, 1045 [2003], *lv denied* 100 NY2d 642 [2003]; *People v Coleman*, 281 AD2d 653, 654 [2001]). His family history of overcoming barriers is compelling. He had no prior criminal record (*see People v Wilt, supra* at 973; *People v Holmes, supra* at 1045; *People v Demeritt*, 291 AD2d 726, 729-730 [2002], *lv denied* 98 NY2d 650 [2002]). The victim's injury, while meeting the statutory definition of serious physical injury, was not as grave as often occurs with assault in the first degree. Defendant had been offered plea deals with prison time as short as six months with cooperation, or 2½ years with no cooperation required on his part (*see People v Thornton*, 4 AD3d 561, 563-564 [2004], *lv denied* 2 NY3d 808 [2004]; *People v Demeritt, supra* at 729; *People v Ruger*, 288 AD2d 686, 688 [2001], *lv denied* 97 NY2d 733 [2002]). Defendant was 18 years old at the time of the crime (*see People v Wilt, supra* at 973; *People v Strawbridge*, 299 AD2d 584, 594 [2002], *lv denied* 99 NY2d 632 [2003]), and he does not appear to have been the person who fired the gun. We note that a juror submitted an affidavit before sentencing urging leniency in which he stated that many of the jurors thought defendant "was a kid who was roped into things by some of the other individuals he was associated with," and that he "played a relatively minor role," perhaps as "the driver of the vehicle." While not diminishing the gravity of the underlying crimes, we nevertheless conclude that the sentence for assault in the first degree should be reduced to 7 to 14 years.

Crew III, J.P., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed for assault in the first degree under count three of the indictment to 7 to 14 years, and, as so modified, affirmed.