■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ORLANDO B. ALVAREZ, Appellant. [830 NYS2d 848]—

Kane, J. Appeal from a judgment of the County Court of Fulton County (Giardino, J.), rendered August 18, 2004, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), assault in the first degree (two counts), assault in the second degree, sexual abuse in the first degree and criminal possession of a weapon in the third degree.

Defendant was charged with multiple crimes related to his attack on the 14-year-old victim which resulted in her death. The jury convicted him of murder in the second degree (two counts), assault in the first degree (two counts), assault in the second degree, sexual abuse in the first degree and criminal possession of a weapon in the third degree. Defendant appeals.

Defendant was not denied a fair trial by the admission of photographs, a video of the crime scene or an audiotape of the 911 calls. "[U]nless photographs lack probative value and are presented solely for the purpose of inflaming a jury, they are admissible in a criminal trial, particularly where they tend to support a material issue or corroborate other evidence in the case" (*People v Alburger*, 248 AD2d 746, 746 [1998], *lv denied* 91 NY2d 1004 [1998]; *see People v Wood*, 79 NY2d 958, 960 [1992]; *People v Pobliner*, 32 NY2d 356, 369-370 [1973], *cert denied* 416 US 905 [1974]). The video and photographs of the victim's dead body at the scene were relevant to refute defendant's story that he moved the body after finding the victim already dead. The close-up photograph of the victim's neck injury was relevant to elucidate the testimony of the medical examiner in describing the fatal wound, to show intent to murder and to illustrate the type of weapon used to inflict the cuts, especially where the weapon was never found (*see People v Wood, supra* at 960; *People v Alburger, supra* at 747; *People v Wilson*, 168 AD2d 696, 698 [1990]; *People v Winchell*, 98 AD2d

838, 840 [1983], *affd* 64 NY2d 826 [1985]).* Despite the existence of other evidence to prove these points, the People were not bound to rely only on that evidence, but could use the photographs and video to clarify the testimony and other evidence (*see People v Buie*, 86 NY2d 501, 509 [1995]; *People v Stevens*, 76 NY2d 833, 836 [1990]). County Court did not abuse its discretion in admitting the photographs and video, and appropriately instructed the jury to avoid making emotional judgments based on any gruesome scenes (*see People v Harp*, 20 AD3d 672, 673 [2005], *lv denied* 5 NY3d 852 [2005]). Defendant does not contest the admissibility of the tape of the 911 call, other than alleging that its prejudice outweighed any probative value. The tape was relevant to describe the crime scene to the jury as its discovery unfolded (*see People v Buie, supra* at 513; *People v Carney*, 18 AD3d 242, 243 [2005], *lv denied* 5 NY3d 882 [2005]; *compare People v Caruso*, 6 AD3d 980, 984-985 [2004], *lv denied* 3 NY3d 704 [2004]). County Court did not abuse its discretion in admitting the tape, with proper limiting instructions. Although the victim's school picture was not relevant to any issue at trial, the admission of that portrait alone was not unduly prejudicial and we deem it harmless (*see People v Stevens, supra* at 836; *People v Winchell, supra* at 840).

Defendant was not deprived of a fair trial based on the prosecution's failure to turn over materials demanded under CPL 240.20, nor by County Court's denial of defendant's request for such materials. CPL article 240, which should be strictly construed, codifies the full breadth of criminal discovery, including disclosure of evidence guaranteed by the Constitution, required by fundamental fairness and mandated by legislative policy (*see People v Colavito*, 87 NY2d 423, 427 [1996]; *Matter of Briggs v Halloran*, 12 AD3d 1016, 1017 [2004]; *Matter of Sacket v Bartlett*, 241 AD2d 97, 101 [1998], *lv denied* 92 NY2d 806 [1998]). "Items not enumerated in article 240 are not discoverable as a matter of right" (*People v Colavito, supra* at 427 [citations omitted]). As relates to DNA testing, the prosecution is required to provide, upon demand by the defendant, "[a]ny written report or document . . . concerning a physical or mental examination, or scientific test or experiment, relating to the

---

* Although defendant contends that these elements were not at issue at trial because he acknowledged that the victim was brutally attacked and murdered, but alleged that he was not the perpetrator, defendant did not stipulate or concede that the elements of the crimes aside from identity were established. In fact, he argues on appeal that the People failed to prove the element of serious physical injury related to two assault counts. As the People were required to prove all elements of each count, these elements were at issue at trial.

criminal action which was made by, or at the request or direction of a public servant engaged in law enforcement activity" (CPL 240.20 [1] [c]).

Here, defendant demanded that the prosecution disclose numerous items, including not only the reports of DNA testing, but also the raw data underlying the results, population statistics or frequency tables utilized to compare the results, information on the computer programs utilized by the State Police testing laboratory, the lab's standard operating procedures, guidelines for interpreting results, lab validation studies, lab accreditation, protocols related to the results in this case and protocols used to determine whether results of testing matched DNA profiles. The People provided copies of the DNA testing reports, the lab's entire case jacket on this file, information on the computer programs used in testing and a CD-R of the computerized raw data from the DNA testing. Despite stating that they refused to provide the frequency tables as not discoverable under CPL 240.20, the People's response noted the tables used and where those tables were publicly available. Defendant had access to those tables and his expert actually used them (*compare People v Davis*, 196 AD2d 597, 598 [1993], *lv denied* 82 NY2d 923 [1994], 84 NY2d 824 [1994]).

Courts have held that CPL 240.20 (1) (c) requires the prosecution to disclose any notes or documents used in the preparation of reports or related to the specific tests of items in a defendant's case (*see People v DaGata*, 86 NY2d 40, 44-45 [1995]; *People v Palumbo*, 162 Misc 2d 650, 654 [1994]; *see also People v Slowe*, 125 Misc 2d 591, 591-592 [1984]), but not the lab's generic DNA testing protocols or procedure manuals (*see People v Kelly*, 288 AD2d 695, 696 [2001], *lv denied* 97 NY2d 756 [2002]; *Matter of Constantine v Leto*, 157 AD2d 376, 379 [1990], *affd* 77 NY2d 975 [1991]). The protocol utilized by the State Police lab to determine when its employees may designate a DNA profile as a match was not a document concerning the particular test performed at the request of the prosecutor, but instead applied to all DNA tests performed at the lab. While this protocol may have been discoverable by defendant on a motion properly made and supported with proof "that discovery with respect to such property is material to the preparation of his defense, and that the request is reasonable" (CPL 240.40 [1] [c]), defendant's request for this information was not supported with any affidavits establishing materiality or reasonableness. It is interesting that defendant did not object to the lack of foundation for the test results on any basis, defense counsel did not specifically question the People's expert regarding the lab's

protocol on determining DNA profile matches and the calling of alleles at each locus, and the defense expert did not conduct independent testing, as he could have done, but instead ran the raw data through a gene profiling computer program which reviewed the data and called some of the prosecution's results into question. Under the circumstances, the prosecution provided all documents required to be disclosed under CPL 240.20 or which were constitutionally required.

Defendant contends that the count for assault in the first degree predicated on his cutting the victim's neck must be dismissed as a lesser included offense of murder in the second degree. Reviewing the statutory definitions of the two charged crimes in the abstract (*see People v Glover*, 57 NY2d 61, 63-64 [1982]), it is theoretically possible to commit intentional murder (*see* Penal Law § 125.25 [1]) without also committing assault by means of a deadly weapon or dangerous instrument (*see* Penal Law § 120.10 [1]). Thus, the assault count was not a lesser included offense of the murder count and the convictions for both may stand (*see People v Thomson*, 13 AD3d 805, 807 [2004], *lv denied* 4 NY3d 836 [2005]; *People v Chapman*, 97 AD2d 381, 382 [1983]).

Finally, defendant failed to preserve his argument challenging the legal sufficiency of the evidence regarding the two assault counts based on him striking the victim in the head, as he did not specifically address these counts in his motion to dismiss (*see People v Silvestri*, 34 AD3d 986, 986-987 [2006]; *People v Riddick*, 34 AD3d 923, 924-925 [2006]). His challenge to the weight of the evidence addresses only the "serious physical injury" element of those counts, which is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]; *see* Penal Law § 120.05 [1]; § 120.10 [4]). Before defendant cut the victim's throat with a knife, causing her death, he inflicted five head wounds with a blunt object. There was no proof that these head wounds individually or collectively were fatal or life-threatening, nor was there proof concerning their long-term effects. Without minimizing the nature of the victim's injuries, we are constrained by this lack of proof to conclude that the weight of the evidence does not support a finding that she sustained serious physical injury within the meaning of the statute (*see People v Gray*, 30 AD3d 771, 773 [2006], *lv denied* 7 NY3d 848 [2006] [and cases cited therein]). Because the evidence supported findings that the victim suffered a physical injury and that defen-

dant intended to inflict a serious physical injury, the count for assault in the first degree should be reduced to attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [4]), and the count for assault in the second degree should be reduced to attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [1]). We therefore remit to County Court for resentencing on those counts (*see People v Gray, supra* at 773).

Cardona, P.J., Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant's conviction for assault in the first degree under count 4 of the indictment to attempted assault in the first degree and reducing defendant's conviction for assault in the second degree under count 5 of the indictment to attempted assault in the second degree; vacate the sentences imposed on those counts and matter remitted to the County Court of Fulton County for resentencing; and, as so modified, affirmed.