# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

880

KA 09-01305

PRESENT: SCUDDER, P.J., FAHEY, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

FLOYD L. SMART, DEFENDANT-APPELLANT.

---

MARK D. FUNK, ROCHESTER, FOR DEFENDANT-APPELLANT.

FLOYD L. SMART, DEFENDANT-APPELLANT PRO SE.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LESLIE E. SWIFT OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (William F. Kocher, A.J.), rendered May 13, 2009. The judgment convicted defendant, upon a jury verdict, of burglary in the second degree.

It is hereby ORDERED that the judgment so appealed from is modified as a matter of discretion in the interest of justice by reducing the sentence imposed to an indeterminate term of incarceration of 15 years to life and as modified the judgment is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of burglary in the second degree (Penal Law § 140.25 [2]). He was sentenced as a persistent felony offender to an indeterminate term of incarceration of 20 years to life. On appeal, defendant contends that the court reporter's readback of certain testimony in response to a jury note violated the procedures set forth in CPL 310.30 and constituted an improper delegation of judicial authority (*see generally People v O'Rama*, 78 NY2d 270, 276-277; *People v Ahmed*, 66 NY2d 307, 310, *rearg denied* 67 NY2d 647). Defendant further contends that, by sending a note to the jury during deliberations, County Court violated defendant's fundamental right to be present at a material stage of trial (*see generally People v Mehmedi*, 69 NY2d 759, 760, *rearg denied* 69 NY2d 985). We note at the outset that, contrary to defendant's contention, the court did not thereby commit mode of proceedings errors such that preservation is not required. In responding to the jury note and directing the readback of testimony with respect to the note, the record establishes that the court fulfilled its "core responsibilities under CPL 310.30" (*People v Tabb*, 13 NY3d 852, 853; *see People v Geroyianis*, 96 AD3d 1641, 1643, *lv denied* 19 NY3d 996; *People v Bonner*, 79 AD3d 1790, 1790-1791, *lv denied* 17 NY3d 792). Prior to responding to the jury

note, the court read it into the record, solicited input from defense counsel, and described its proposed response. Then, when the jury clarified its request in the note, the court reporter read the relevant portion of the testimony into the record, under the supervision of the court and in the presence of defendant and the prosecutor. Defendant registered no objections. We thus conclude that defendant was required to preserve his contentions for our review, but he failed to do so (*see People v Ramirez*, 15 NY3d 824, 825-826; *People v Starling*, 85 NY2d 509, 516; *People v Rivera*, 83 AD3d 1370, 1370-1371, *lv denied* 17 NY3d 904; *cf. People v Kisoon*, 8 NY3d 129, 134-135). In any event, defendant's contentions are without merit (*see People v Hernandez*, 94 NY2d 552, 555-556; *People v Harris*, 76 NY2d 810, 812; *People v Gabot*, 176 AD2d 894, 894-895, *lv denied* 79 NY2d 947).

We reject defendant's further contention that the court erred in admitting the grand jury testimony of a witness after conducting a *Sirois* hearing (*see Matter of Holtzman v Hellenbrand*, 92 AD2d 405, 407-408). The People presented clear and convincing evidence establishing that misconduct by defendant and his mother, who acted at defendant's behest, caused the witness to be unavailable to testify at trial (*see People v Geraci*, 85 NY2d 359, 370-371; *People v Dickerson*, 55 AD3d 1276, 1277, *lv denied* 11 NY3d 924; *People v Major*, 251 AD2d 999, 999-1000, *lv denied* 92 NY2d 927).

Defendant's challenge in his pro se supplemental brief to the constitutionality of New York's discretionary persistent felony offender sentencing statute is unpreserved for our review (*see People v Rosen*, 96 NY2d 329, 333-335), and in any event is without merit (*see People v Quinones*, 12 NY3d 116, 122-131, *cert denied* ___ US ___, 130 S Ct 104; *People v Bastian*, 83 AD3d 1468, 1470, *lv denied* 17 NY3d 813).

We conclude, however, that, while the court did not abuse its discretion in sentencing defendant as a persistent felony offender, the sentence nevertheless is unduly harsh and severe. This Court "has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range" (*People v Delgado*, 80 NY2d 780, 783; *see* CPL 470.15 [6] [b]). That "sentence-review power may be exercised, if the interest of justice warrants, without deference to the sentencing court" (*Delgado*, 80 NY2d at 783). As a result, we may " 'substitute our own discretion for that of a trial court which has not abused its discretion in the imposition of a sentence' " (*People v Patel*, 64 AD3d 1246, 1247). We conclude that a reduction in sentence is appropriate under the circumstances presented here. Although burglary in the second degree is classified as a violent felony offense (Penal Law §§ 70.02 [1] [b]; 140.25 [2]), defendant did not employ actual violence in the instant offense despite being confronted by the woman whose residence he unlawfully entered. With the possible exception of two misdemeanor convictions of resisting arrest and criminal possession of a weapon dating to the 1980s, and a 2001 felony conviction of burglary in the second degree, the circumstances of which are unknown, it does not appear that defendant, despite a

lengthy criminal record, has ever used or threatened violence in the commission of a crime.  Therefore, as a matter of discretion in the interest of justice, we modify the judgment by reducing the sentence imposed to an indeterminate term of incarceration of 15 years to life (*see* CPL 470.20 [6]; *People v Daggett*, 88 AD3d 1296, 1298, *lv denied* 18 NY3d 956; *People v Currier*, 83 AD3d 1421, 1423, *amended on rearg* 85 AD3d 1657).  We note, in response to the dissent, that we are only modifying the minimum term of defendant's sentence.  Because we are not vacating the court's discretionary sentencing of defendant as a persistent felony offender, the maximum term must remain unchanged.  Given the lack of violence in defendant's criminal history, we conclude that 15 years is sufficient both as a minimum period of incarceration and for defendant to establish whether he has earned the right to parole.

We have reviewed defendant's remaining contentions in his pro se supplemental brief and conclude that none warrants reversal or further modification of the judgment.

All concur except SCUDDER, P.J., and MARTOCHE, J., who dissent in part and vote to affirm in the following Memorandum:  We respectfully dissent in part and would affirm the judgment of conviction without reducing defendant's sentence.  In our view, the sentence is not unduly harsh or severe and thus, under the circumstances of this case, we see no reason to reduce the sentence as a matter of discretion in the interest of justice.

Defendant was charged with burglary in the second degree (Penal Law § 140.25 [2]) and, following a jury trial, was convicted of that charge.  The conviction arose out of an incident in which defendant, with two others, entered a home and stole several items of property.  Defendant was identified by the resident as one of the people she saw running from her home when she returned there.

Prior to trial, a *Sirois* hearing was held in connection with the People's request to present at trial the grand jury testimony of a witness who allegedly was unavailable as a result of defendant's actions and threats (*see Matter of Holtzman v Hellenbrand*, 92 AD2d 405, 410).  The People alleged that defendant made telephone calls to his mother from the Monroe County Jail, in which he encouraged his mother to keep the witness from testifying.  The People further alleged that, during those conversations, defendant's mother had described her efforts at keeping the witness "high" to prevent her from coming to court.  Defendant allegedly told his mother, "that is not enough," and he further told her that she needed to get the witness "out of town."  The People alleged that they were unable to locate the witness and requested a hearing to determine her unavailability as a result of defendant's actions.  In fact, at the *Sirois* hearing, an investigator with the Monroe County Sheriff's Office testified that he listened to telephone calls between defendant and his mother and that during one of the telephone calls defendant told his mother that if the witness "walks into the courtroom [he would] get 15 to life.  If she doesn't [he would] probably get a misdemeanor or go scott free."  County Court concluded that the People

proved by clear and convincing evidence that the witness's unavailability was the result of defendant's actions to keep the witness from testifying and granted the People's request to present that witness's grand jury testimony at trial.

Also prior to trial, defendant was offered a plea bargain pursuant to which he would be sentenced as a violent felony offender to a seven-year determinate term of imprisonment with five years of postrelease supervision. Defendant was advised that if he declined the offer and chose to go to trial, he was facing persistent felony offender (PFO) status if convicted with a sentence range of a minimum of 15 years to life and a maximum of 25 years to life.

After defendant was convicted he moved to set aside the verdict and, after hearing argument, the court denied the motion. The court then proceeded to the sentence phase. Defense counsel raised a question regarding the presentence report (PSI) and whether it had been updated since defendant's prior felony conviction in 2001. The court indicated that it did not see a need to "order anything further on the PSI" because, from the time of the prior PSI, defendant had been incarcerated except for a very brief period until he committed the instant offense. The court then reviewed defendant's prior criminal record and defense counsel advised the court that there was an offer, to "obviate the need" for a PFO hearing, that defendant would be incarcerated to "a straight 15 years['] determinate to a burglary two with five years['] post release supervision." Defense counsel added that he believed that the sentence would be illegal because it would "exceed the maximum on the C felony," i.e., if defendant were to violate the five years' postrelease supervision aspect of the offer, "he would be in jeopardy of another five years, which would make it beyond the maximum." Defense counsel added that, in any event, defendant would not accept the offer because it was contingent on defendant waiving his right to appeal, which was something defendant was not "prepared to do."

The People established at the PFO hearing that defendant was convicted of criminal possession of stolen property in the third and fourth degrees in 1994 (and was sentenced to terms of incarceration of 3½ to 7 years and 2 to 4 years, respectively), and that he was convicted of burglary in the second degree in 2001 (and was sentenced to a term of incarceration of 6 years followed by 5 years' postrelease supervision). A 1989 conviction of burglary in the second degree was reversed (*People v Smart*, 171 AD2d 1072). It was revealed that defendant was out of jail on the 2001 burglary conviction for less than four months before committing the instant offense. Defendant did not testify at the hearing.

The court, citing defendant's 25-year criminal history and 15 prior convictions, three of which were felonies (although one was reversed), and his "numerous" violations of probation and parole, found that PFO sentencing was warranted in this case and sentenced defendant to an indeterminate term of incarceration of 20 years to life.

"The power of the Appellate Division to reduce a sentence, which it finds unduly harsh or severe, in the interest of justice and impose a lesser one has long been recognized in this State" (*People v Thompson*, 60 NY2d 513, 520).  The power originally was exercised as an inherent power (*see People v Miles*, 173 App Div 179, 183-184) and was later codified in section 543 of the Code of Criminal Procedure (*see Thompson*, 60 NY2d at 520).  Upon adoption of the Criminal Procedure Law in 1971, the Legislature expressly authorized the practice without substantive change (*see* CPL 470.15 [6] [b]; 470.20 [6]).  Notably, the Court of Appeals is without similar authority (*see People v Quinones*, 12 NY3d 116, 130 n 6, *cert denied* ___ US ___, 130 S Ct 104).  Thus, any reduction of a sentence by the Appellate Division is not subject to further review.

We recognize that the Appellate Division has discretion in determining whether a sentence is unduly harsh or severe.  We further recognize that we should exercise that discretion in "unique and narrow circumstances" (*People v Khuong Dinh Pham*, 31 AD3d 962, 967).  For example, in *Khuong Dinh Pham*, the defendant had lived a crime-free, respectable life since the crime was committed and had no prior criminal record.  Additionally, the defendant played a minor role in the crime of which he was convicted.  Similarly, in *People v Wilt* (18 AD3d 971, 973, *lv denied* 5 NY3d 771), the factors weighing in favor of a sentence reduction were the defendant's youth, his lack of a criminal record, and his impaired emotional and mental health.

By contrast, here the People noted at sentencing that defendant's criminal record "consisted of approximately 11 misdemeanor convictions, five felony convictions, one of which is a violent felony offense for burglary in the second degree," and that defendant's "history and character demonstrate that society would best be served if he was sentenced to an extended period of incarceration and lifetime supervision" (*see* Penal Law § 70.10 [2]).  The People asked that defendant be sentenced to the maximum term of 25 years to life as a persistent felony offender.  Defense counsel's response to the People's request for the imposition of the maximum term of incarceration was to "continue to assert" defendant's innocence.  Defendant was given an opportunity to speak and told the court that his "conviction is wrong."  Defendant further told the court that he "never intended for [the witness] to not come to trial.  In fact, I begged her to come to trial and tell the truth over and over and over, amongst other things, but she wouldn't do it."  Notably, the uncontradicted testimony of several police officers at the *Sirois* hearing established the existence of numerous telephone calls involving defendant that concerned the victim, and established that defendant did not want the witness to testify at trial and took steps to ensure that she not do so.  Ultimately, when the court sentenced defendant, it stated that, "if you're not a persistent felony offender, I don't know who is."  The court further stated, while addressing defendant, that "when you do get out, I have this fear and concern that you're just going to continue this type of conduct . . . [A]pparently everything you have done since you were back in your teens has been criminal in nature."  The PSI report confirms the court's assessment of defendant.  Defendant was born on September 9,

1965, and had a juvenile criminal history. His first arrest as an adult occurred on December 16, 1982 and the PSI lists 24 arrests apart from the arrest in this case. Many of those arrests were for burglary, grand larceny and criminal possession of stolen property.

The majority, while recognizing that defendant was convicted of a violent felony offense, nevertheless concludes that, because no actual violence was employed during the commission of the offense, defendant's sentence should be reduced to the statutory minimum. In our view, that position not only usurps the discretion of the trial court in imposing a sentence, but it also usurps the authority of the Legislature in categorizing offenses. Penal Law § 140.25 contains two subdivisions, with the common element that a person knowingly enter or remain unlawfully in a building with intent to commit a crime therein. The first subdivision requires the additional element of the person or another participant in the crime: being armed with explosives or a deadly weapon; causing physical injury to any person not a participant in the crime; using or threatening the immediate use of a dangerous instrument; or displaying what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm (§ 140.25 [1] [a] - [d]). In the alternative, a person is also guilty of burglary in the second degree when he or she knowingly enters or remains unlawfully in a building with intent to commit a crime therein and that building is a dwelling (§ 140.25 [2]), the crime of which defendant here was convicted. Both categories of the crime of burglary in the second degree have been deemed violent felonies by the Legislature (*see* § 70.02 [1] [b]).

In *People v Johnson* (38 AD3d 1057, 1059), the defendant challenged the trial court's imposition of a sentence for burglary in the second degree as a violent felony offense on the ground that the legislative classification of burglary in the second degree as a violent felony where no violence was used or proven was unconstitutional or illegal. The defendant argued "that he was denied due process because he was not allowed to contest this classification" (*id.*). The Third Department concluded that it was "the Legislature's function to classify crimes and to 'distinguish among the ills of society which require a criminal sanction, and prescribe, as it reasonably views them, punishments appropriate to each' " (*id.*, quoting *People v Broadie*, 37 NY2d 100, 110). The Third Department further noted that, "[s]ince the 1981 amendments to Penal Law § 140.25 (2) (L 1981, ch 361), the Legislature determined 'to classify all burglaries of dwellings as class C or higher violent felonies . . . apparently based upon its assessment that the potential for violence was the same irrespective of the time of their commission,' abrogating the distinction between those committed at night and those committed during the day" (*id.*). In our view, the fact that defendant did not employ actual violence in committing the instant offense should not inure to his benefit; the Legislature has unequivocally indicated its intent that the crime committed by defendant be considered a violent felony offense, regardless of whether actual violence was employed.

In our view, reducing defendant's sentence improperly interferes with the broad province of the trial court, which not only considered

defendant's extraordinarily lengthy criminal history, his lack of remorse and his denial of his involvement in the crime, but also considered defendant's significant attempts to prevent a witness from testifying and the impact of the crime on the victim.

For all of the above-stated reasons, we cannot agree with the majority that the sentence imposed, which fell at the mid-point between the range of minimum and maximum sentencing, was unduly harsh or severe.

Entered:  November 16, 2012                     Frances E. Cafarell
                                               Clerk of the Court