Garry, J.
Appeal from a judgment of the Supreme Court (Teresi, J.), rendered September 18, 2012 in Albany County, upon a verdict convicting defendant of the crime of burglary in the second degree.
Defendant was convicted after a jury trial of burglary in the second degree in connection with her unlawful entry into the victim’s home and apparent attempt to steal money from him. Initially, we reject defendant’s claim that Supreme Court erred in denying the motion to suppress the statement she made to the police shortly after the crime. The testimony of the officer *1000 who took the statement, together with the videotape of the interrogation, are sufficient to meet the People’s burden of proving beyond a reasonable doubt that defendant’s statement was voluntary (see People v Mattis, 108 AD3d 872, 874 [2013], lv denied 22 NY3d 957 [Oct. 7, 2013]) and that her will was not overborne (see People v Pouliot, 64 AD3d 1043, 1045-1046 [2009], lv denied 13 NY3d 838 [2009]). The questioning lasted less than three hours, during which time defendant was provided with a beverage and the opportunity to take a break, and the officers did not engage in unduly coercive activity.
Next, although defendant failed to adequately preserve her argument that the proof was legally insufficient to support her conviction, we nonetheless necessarily review the evidence presented on each element as part of our weight of the evidence analysis (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Caston, 60 AD3d 1147, 1148-1149 [2009]). To support the conviction of burglary in the second degree as charged here, the People were required to prove that defendant knowingly and unlawfully entered a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]). The victim testified that at approximately 1:40 a.m. on July 5, 2011, he and his four-year-old daughter were asleep on the sofa in his home when he awoke to find defendant, who was well known to him and who he had not invited into his home, leaning over him and holding his wallet. A short struggle ensued, whereupon a tall black man, ultimately determined to be defendant’s fiancé, broke the sliding glass door with a tricycle, entered the room and briefly struggled with the victim, then grabbed hold of defendant and hustled her from the premises. The victim pursued them while calling 911 on his cell phone. He observed the vehicle they escaped in, and when the police arrived, he identified both defendant and the vehicle, which he knew to belong to her. The victim further testified that the sliding glass door had been locked and fitted with an alarm, and that a bedroom window found open by police during their investigation had also been locked prior to defendant’s entry into the home.
Defendant offered a different version of events, testifying that the victim, who was a friend she visited often, called her on the night in question and invited her to his home. When she arrived, she knocked on the sliding glass door but failed to awaken him, so, as she usually did, she let herself in through that door, which was unlocked. She shook him, startling him awake, and he grabbed her shoulders. Defendant’s fiancé then threw something at the glass door, smashing it, and the victim yelled, frightening defendant, who ran out through the broken door.
*1001 Although defendant attacks the victim’s credibility, we note that his testimony addresses each element of the crime. Viewing all the evidence in a neutral light and according appropriate deference to the jury’s credibility determinations, we find that the verdict was not against the weight of the evidence (see People v Mateo, 101 AD3d 1458, 1459-1460 [2012], lv denied 21 NY3d 913 [2013]; People v Fomby, 101 AD3d 1355, 1356 [2012]).
However, we are persuaded that defendant’s sentence of 9V2 years in prison followed by five years of postrelease supervision should be modified in the interest of justice (see GPL 470.15 [6] [b]). Although defendant had prior misdemeanor convictions, this is her first felony conviction, and the record before us establishes that she is not a hardened criminal. She was employed as a home health aide at the time of her arrest and was supporting four of her children. In addition, despite her history of drug use, after in-patient rehabilitation, she had stayed clean for four years before relapsing prior to her arrest. Under these circumstances, this offense, while serious, does not warrant a sentence fully six years longer than the minimum allowable (see Penal Law § 70.02 [3] [b]) and nearly five times greater than the two years offered to her in the proposed plea agreement. Accordingly, we reduce defendant’s sentence to a prison term of five years with 2V2 years of postrelease supervision (see Penal Law §§ 70.02 [3] [b]; 70.45 [2] [f]; People v Carter, 74 AD3d 1375, 1378-1379 [2010], lv denied 15 NY3d 772 [2010]; People v Khuong Dinh Pham, 31 AD3d 962, 967 [2006]; People v Holmes, 304 AD2d 1043, 1045 [2003], lv denied 100 NY2d 642 [2003]; People v Demeritt, 291 AD2d 726, 729-730 [2002], lv denied 98 NY2d 650 [2002]).
Peters, PJ., Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed to five years in prison followed by 2V2 years of postrelease supervision, and, as so modified, affirmed.