People v Marshall (2018 NY Slip Op 04038)





People v Marshall


2018 NY Slip Op 04038


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

108316

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JAMES D. MARSHALL, Appellant.

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Paul J. Connolly, Delmar, for appellant.
Matthew VanHouten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Tompkins County (Miller, J.), rendered March 10, 2016, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree.
In June 2015, defendant was involved in an altercation with the victim and shot him in the leg. In connection with this incident, defendant was charged by indictment with one count of assault in the first degree, two counts of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant, as a second violent felony offender, to an
aggregate prison term of 13 years, to be followed by five years of postrelease supervision. Defendant appeals.
We reject defendant's contention that the indictment should have been dismissed because the grand jury proceedings were defective. "[G]rand jury proceedings enjoy a presumption of regularity which is the challenger's burden to overcome" (People v Nash, 69 AD3d 1113, 1114 [2010], lv denied 15 NY3d 754 [2010]; see generally People v Huston, 88 NY2d 400, 409 [1996]). Other than a conclusory assertion, defendant does not elaborate on this point or specify any particular defect in the grand jury proceedings. Defendant therefore failed to show that the indictment should have been dismissed on this ground. In any event, our review of [*2]the grand jury minutes discloses no defect.
Defendant failed to preserve his argument that the evidence was not legally sufficient to support the verdict in light of his failure to renew his trial motion to dismiss at the close of all proof (see People v Jackson, 151 AD3d 1466, 1468 [2017], lv denied 30 NY3d 950 [2017]; People v Brown, 139 AD3d 1178, 1178 [2016]). Defendant, however, also assails the verdict as being against the weight of the evidence and, therefore, we review the evidence as to each element of the crimes for which he was convicted (see People v Place, 152 AD3d 976, 977 [2017], lv denied 30 NY3d 1063 [2017]; People v Brabham, 126 AD3d 1040, 1041 [2015], lv denied 25 NY3d 1160 [2015]). Where, as here, a different outcome would not have been unreasonable, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citations omitted]; see People v Gabriel, 155 AD3d 1438, 1439 [2017]).
At trial, the victim testified that he went to his ex-girlfriend's apartment but she did not let him inside. The victim called the ex-girlfriend on his cell phone and asked if someone else was with her, to which the ex-girlfriend responded in the negative. They continued to talk, and the ex-girlfriend reiterated that no one else was in her apartment. The ex-girlfriend testified that defendant was actually with her but she knew there would be a problem if the victim was aware of defendant's presence. The victim then got a butter knife and tried to pry the window open. The victim was unsuccessful and asked the ex-girlfriend to come out, but she refused. The victim remained outside the apartment for about two hours and the ex-girlfriend did not want defendant to leave because she knew the victim would fight him.
The victim testified that, later, defendant and his ex-girlfriend came out of the apartment. The victim stated that defendant had his hand in his jacket as though he was holding something. According to the victim, defendant "smirked" at him and moved. The victim then "just hit him." After doing so, the victim saw that defendant had a gun. They continued to fight and the victim then realized that he was shot in the leg. The ex-girlfriend stated that the victim kept saying, "Oh, you shot me. Oh, you shot me." The victim was able to pin defendant on the ground and the victim and the ex-girlfriend both testified that, at this point, defendant was holding a gun. The victim then let him off the ground and defendant ran away. The victim was bleeding and he explained to the police officers who had subsequently arrived what had happened.
Regarding the conviction for assault in the first degree, defendant questions the proof with respect to the element of intent. Upon reviewing the evidence in a neutral light, however, the jury could infer from the evidence that defendant possessed the requisite intent to cause serious physical injury to the victim (see Penal Law § 120.10 [1]; People v Madore, 145 AD3d 1440, 1442 [2016], lv denied 29 NY3d 1034 [2017]; People v Mathews, 134 AD3d 1248, 1250 [2015]; People v Malcolm, 74 AD3d 1483, 1484-1485 [2010], lv denied 15 NY3d 954 [2010]). Furthermore, the jury was entitled to reject defendant's testimony that the victim held the gun in his hand and was inadvertently shot during their fight (see People v Gibson, 141 AD3d 1009, 1012 [2016]; People v Morrison, 71 AD3d 1228, 1229-1230 [2010], lvs denied 15 NY3d 747, 754 [2010]; People v Moore, 277 AD2d 596, 597 [2000], lv denied 96 NY2d 761 [2001]).
Notwithstanding the foregoing, we agree with defendant that the weight of the evidence does not support a finding that the victim sustained a serious physical injury. Serious physical injury is defined as a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss [*3]or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). As to whether the victim sustained a physical injury that created a substantial risk of death, the victim testified that, following the shooting, he was in "miraculous pain," he underwent two surgeries, his tibia bone was "shattered" and pins were inserted to hold the bones in place. The pins, however, were removed four months after their insertion, at which point the pain subsided. The victim then wore a cast on his leg for 1½ months. Although the victim's injuries are by no means trivial, they fall short of constituting injuries that create a substantial risk of death. There was no evidence that the victim lost consciousness after being shot or that a vital organ was damaged. Nor was there any proof, lay or medical, indicating that the victim's injuries caused a substantial risk of death or were life threatening (see People v Alvarez, 38 AD3d 930, 934-935 [2007], lv denied 8 NY3d 981 [2007]; People v Sleasman, 24 AD3d 1041, 1042-1043 [2005]; cf. People v Daniels, 97 AD3d 845, 847 [2012], lv denied 20 NY3d 931 [2012]; People v Nimmons, 95 AD3d 1360, 1360-1361 [2012], lv denied 19 NY3d 1028 [2012]; People v Tucker, 91 AD3d 1030, 1031-1032 [2012], lv denied 19 NY3d 1002 [2012]; People v Ham, 67 AD3d 1038, 1039-1040 [2009]; People v Gray, 30 AD3d 771, 772-773 [2006], lv denied 7 NY3d 848 [2006]; People v Horton, 9 AD3d 503, 504-505 [2004], lv denied 3 NY3d 707 [2004]; compare People v McCloud, 121 AD3d 1286, 1288 [2014], lv denied 25 NY3d 1167 [2015]; People v Casey, 61 AD3d 1011, 1013 [2009], lv denied 12 NY3d 913 [2009]).
The record evidence also does not support a finding that the victim suffered from a protracted impairment of health or protracted loss or impairment of the function of a bodily organ (see People v Stewart, 18 NY3d 831, 832-833 [2011]; People v Alvarez, 38 AD3d at 934-935; cf. People v Gray, 30 AD3d at 772-773; People v Phillip, 279 AD2d 802, 803-804 [2001], lv denied 96 NY2d 905 [2001]; compare People v Ford, 156 AD3d 1242, 1244-1245 [2017], lv denied ___ NY3d ___ [Apr. 26, 2018]; People v Heyliger, 126 AD3d 1117, 1119 [2015], lv denied 25 NY3d 1165 [2015]; People v Khuong Dinh Pham, 31 AD3d 962, 965-966 [2006]). By the time of trial, which was less than six months after the shooting, the victim stated that he had "a little limp," but was nonetheless able to walk. The victim was also undergoing "rehab" but he did not state for how long. When asked whether he could continue to play arena football, he merely responded, "Not at this time" and did not state that his injury to his leg prohibited him from playing in the future. Finally, as discussed, the victim stated that the pain had subsided once the pins were removed. Accordingly, although the victim's testimony and the photographs show a significant injury immediately following the shooting, there was no corresponding proof regarding its long-term effects (see People v Alvarez, 38 AD3d at 934).
As to whether the victim sustained a serious and protracted disfigurement, we note that the victim showed his scar to the jury. There was, however, no contemporaneous description of what the jury saw to demonstrate the extent of such scarring, nor can such extent be discerned from the photographs entered into evidence (see People v McKinnon, 15 NY3d 311, 316 [2010]; People v Santos, 151 AD3d 1620, 1620-1621 [2017], lv denied, 29 NY3d 1133 [2017]; People v Tucker, 91 AD3d at 1032; compare People v Jones, 136 AD3d 1153, 1156-1157 [2016], lv denied 27 NY3d 1000 [2016]). Thus, the record evidence does not establish a serious physical injury as defined by Penal Law § 10.00 (10). Nonetheless, given that the evidence supports a finding that defendant committed the lesser included crime of attempted assault in the first degree, the conviction for assault in the first degree should be reduced to the lesser included offense of attempted assault in the first degree, the sentence imposed thereon vacated and the matter remitted to County Court for resentencing on such crime (see People v Alvarez, 38 AD3d at 934-935; People v Gray, 30 AD3d at 773; People v Alvarado, 262 AD2d 710, 711 [1999]).
Defendant argues that the verdict with respect to the criminal possession of a weapon charges was against the weight of the evidence because the proof was deficient with respect to [*4]the possession element (see Penal Law §§ 265.02 [1]; 265.03 [1] [b], [3]). In particular, defendant asserts that the only witnesses who testified that he possessed a gun were the victim and the ex-girlfriend and they were not credible. The veracity of these witnesses, however, was thoroughly explored at trial and, contrary to defendant's assertion, nothing in their respective testimonies renders them incredible as a matter of law (see People v Dallas, 58 AD3d 1019, 1020 [2009], lv denied 12 NY3d 815 [2009]). According deference to the jury's credibility assessments given its ability to observe the demeanor of the witnesses, we see no basis to disturb the verdict with respect to the criminal possession of a weapon charges (see People v Harwood, 139 AD3d 1186, 1188 [2016], lv denied 28 NY3d 1028 [2016]; People v Wright, 134 AD3d 1299, 1300-1301 [2015]; People v Mosher, 94 AD3d 1231, 1232 [2012], lv denied 19 NY3d 999 [2012]).
Defendant's argument that County Court erred by not giving a justification charge is not preserved for review in light of his failure to request such charge or to object to the court's final charge as given (see People v Ramirez, 118 AD3d 1108, 1111 [2014]). In any event, the facts and circumstances of this case did not warrant such charge (see People v Brown, 184 AD2d 856, 858 [1992], lv denied 80 NY2d 927 [1992]; compare People v Craft, 101 AD2d 984, 985 [1984]). To that end, defendant was not denied effective assistance based upon his counsel's failure to request a justification charge (see People v Andrews, 78 AD3d 1229, 1231-1232 [2010], lv denied 16 NY3d 827 [2011]).
Finally, defendant argues that the aggregate sentence of 13 years is harsh and excessive. County Court sentenced defendant to a prison term of 10 years, plus five years of postrelease supervision, for the conviction of assault in the first degree. As discussed, the sentence for this conviction must be vacated. Notwithstanding the foregoing, for the criminal possession of a weapon in the second degree convictions, County Court sentenced defendant to concurrent prison terms of 13 years, plus five years of postrelease supervision. Where, as here, the sentence falls within the permissible statutory range, it will not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification (see People v Gray, 151 AD3d 1470, 1476 [2017], lv denied 30 NY3d 949 [2017], cert denied ___ US ___, 138 S Ct 1295 [2018]; People v Decoste, 144 AD3d 1265, 1266 [2016]). Because neither is present, we reject defendant's challenge to the imposed aggregate sentence (see People v Nelson, 128 AD3d 1225, 1228 [2015], lv denied 26 NY3d 1041 [2015]; People v Thomas, 105 AD3d 1068, 1072 [2013], lv denied 21 NY3d 1010 [2013]).
Garry, P.J., and Rumsey, JJ., concur.




Egan Jr., J. (concurring in part and dissenting in part).


We agree with the majority's determination that the grand jury proceedings were not defective, that there was support in the record from which the jury could infer defendant's intent to cause serious physical injury with respect to his conviction for assault in the first degree, that his convictions for criminal possession of a weapon were not against the weight of the evidence, that he failed to preserve his challenge to the jury charge and that the sentence imposed was not harsh or excessive. However, because we find that the evidence introduced at trial supports a finding that the victim sustained a serious physical injury (see Penal Law §§ 10.00 [10]; 120.10 [1]), we respectfully dissent from the majority's holding that defendant's conviction for assault in the first degree was against the weight of the evidence.
As relevant here, a defendant is guilty of assault in the first degree when, "[w]ith intent [*5]to cause serious physical injury to another person, he [or she] causes such injury to such person . . . by means of a deadly weapon" (Penal Law § 120.10 [1]). In turn, serious physical injury is defined as a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]).
The victim's testimony, coupled with photographs of the injuries that he sustained, establish that he was shot in the left leg at close range, sustaining an entry wound slightly below the knee and an exit wound near his calf. The photographs of the injury clearly show two holes in the victim's leg from the bullet entry wound and the bullet exit wound, and they show the extensive bleeding that he suffered as a result thereof. Although no medical evidence was introduced at trial with regard to the victim's injuries, the victim testified that, after sustaining the gunshot wound, he was transported via ambulance to the hospital where he immediately underwent surgery, followed by a second surgery two days later. The victim testified that the gunshot wound "shattered" his tibia and that, during the initial surgery, an "external fixator" was mounted, which consisted of a series of metal rods and pins being drilled into the bone to brace or stabilize same. The external fixator remained in place for four months, during which time the victim was not mobile and largely confined to bed. The victim testified that he returned to the hospital for regular monthly visits during such time, wherein certain metal pins or rods were removed, as necessary, and that he felt "miraculous pain" throughout the four months that the external fixator remained in place. After removal of the external fixator, the victim was then placed into a walking cast for an additional month and a half. The victim testified that, as of trial, he continued to walk with a limp and was still undergoing rehabilitation for his injuries, and the gunshot wound left him with "visible scarring," which he displayed to the jury.
Based on the foregoing, it is our opinion that the jury reasonably found that the victim suffered a protracted impairment of health, constituting a serious physical injury such that defendant's conviction for assault in the first degree was supported by the weight of the evidence (see Penal Law §§ 10.00 [10]; 120.10 [1]; People v Kern, 75 NY2d 638, 658 [1990], cert denied 498 US 824 [1990]; People v Ford, 156 AD3d 1242, 1243 [2017], lv denied ___ NY3d ___ [Apr. 26, 2018]; People v Jones, 136 AD3d 1153, 1156-1157 [2016], lv denied 27 NY3d 1000 [2016]; People v Heyliger, 126 AD3d 1117, 1119 [2015], lv denied 25 NY3d 1165 [2015]; People v Rice, 90 AD3d 1237, 1237-1238 [2011], lv denied 18 NY3d 961 [2012]; People v Casey, 61 AD3d 1011, 1012-1013 [2009], lv denied 12 NY3d 913 [2009]; People v Coy, 45 AD3d 1050, 1051 [2007]; People v Khuong Dinh Pham, 31 AD3d 962, 965-966 [2006]; compare People v Stewart, 18 NY3d 831, 832-833 [2011]; People v Gray, 30 AD3d 771, 773 [2006], lv denied 7 NY3d 848 [2006]). Accordingly, we would affirm defendant's judgment of conviction in all respects.
Devine, J., concurs.
ORDERED that the judgment is modified, on the facts, by reducing defendant's conviction for assault in the first degree under count 1 of the indictment to attempted assault in the first degree; vacate the sentenced imposed thereon and matter remitted to the County Court of Tompkins County for resentencing on said count; and, as so modified, affirmed.